■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNY BLANCHARD, Appellant. [718 NYS2d 722] —Cardona, P. J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered April 28, 1998, upon a verdict convicting defendant of the crimes of murder in the second degree (four counts) and burglary in the second degree (two counts).

On July 3, 1994, the bodies of Josephine Zurek and Walter Paszkowski were found in Zurek's apartment located on Second Street in the City of Albany. In an abandoned building next door, Albany Police detectives found some personal clothing, paraphernalia for smoking crack cocaine, a wallet containing defendant's personal identification papers and two items of jewelry belonging to the victims.

On July 5, 1994 at approximately 9:50 P.M., defendant was apprehended by Albany Police officers on an outstanding warrant for violation of probation and transported to the detective office where he made oral and written statements implicating himself in the homicides.

Defendant was indicted on six counts of murder in the second

degree (alleging intentional, depraved indifference and felony murder) and two counts of burglary in the second degree. Following a jury trial, defendant was convicted of four counts of murder in the second degree and two counts of burglary in the second degree. He was sentenced to two consecutive prison terms of 25 years to life on the first and second counts charging intentional murder, two additional prison terms of 25 years to life on each of the remaining two felony murder counts, and 5 to 15 years on each count of burglary in the second degree, to run consecutively with respect to each other and with respect to the intentional murder counts.

Defendant first contends that his oral, written and recorded statements were improperly admitted at trial because they were obtained in violation of his constitutional rights against self-incrimination, to due process of law (US Const 5th, 14th Amends; NY Const, art I, § 6) and right to counsel (US Const 6th Amend). It is settled law that the voluntariness of an inculpatory statement is determined from the "totality of the circumstances" under which the statement was taken (*see, People v Williams*, 62 NY2d 285, 289; *People v Anderson*, 42 NY2d 35, 38; *People v Miller*, 244 AD2d 828). Defendant presented evidence at the suppression hearing that he was inebriated and had smoked crack cocaine prior to his apprehension. He testified that he was subjected to physical and psychological coercion consisting of 12 hours of continuous interrogation by several different teams of detectives who ignored his requests for counsel. He further testified that the last time he had slept prior to his arrest was Monday, July 4, 1994 for five hours, having arisen in mid-afternoon. Defendant also stated that he was forced to sit upright in a chair during questioning and his written statement was obtained after 48 hours without sleep. Defendant testified that he never read the written statement but only signed and initialed it where told. He claims that he was promised rest only if he signed the written statement.

On the other hand, evidence presented by the People indicated that prior to questioning, and again prior to the taking of the written statement, defendant was administered, understood and waived his *Miranda* warnings. Albany Police Detective Anthony Bruno testified that he had defendant read aloud the preprinted *Miranda* warnings at the top of the written statement form before he took defendant's statement and, after inquiring if defendant understood them, had defendant initial each one. Bruno also stated that defendant agreed to give the statement which began at 11:48 A.M. and ended at

12:29 P.M. The People's witnesses further testified that defendant did not appear intoxicated or under the influence of drugs during the questioning, never requested counsel, and was given food, drink and cigarettes more than once. Albany Police Detective Kenneth Kennedy testified that defendant was not offered the opportunity to sleep because he did not appear sleepy or complain about being tired. The prosecution's evidence also showed that defendant never requested to make a phone call on the evening of July 5, 1994 following his arrest, but, on the morning of July 6, 1994, was permitted to call his friend, Peretta Jackson. Defendant was allowed to call Jackson twice on July 6, 1994, once in the late morning before his arraignment on the violation of probation charge, and again in the early afternoon after his written statement was completed and prior to his arraignment on the murder charges.

Inasmuch as there is support for County Court's findings in the record and according deference to its credibility assessments (see, People v Prochilo, 41 NY2d 759, 761; People v Miller, 244 AD2d 828, supra), we conclude that, under the totality of the circumstances, it did not err in determining that defendant's statements were voluntarily made " 'after a knowing, voluntary and intelligent waiver of his constitutional rights' " (People v Phillips, 277 AD2d 816, 817, quoting People v Thomas, 273 AD2d 606, 607, lv denied 95 NY2d 872). Accordingly, we find that the statements were not obtained in violation of defendant's constitutional rights against self-incrimination or to due process of law and, therefore, properly admitted at trial. Furthermore, we find no basis to disturb County Court's additional findings that certain of defendant's statements were spontaneous utterances (see, People v Campney, 94 NY2d 307, 314) and were, likewise, admissible.

Concerning defendant's contention that his statements were obtained in violation of his right to counsel, we note that the right indelibly attached on the violation of probation charge when the instrument was filed with the court and the arrest warrant issued (see, People v Samuels, 49 NY2d 218, 221). We find, nevertheless, that the pendency of that charge did not, by itself, bar the police from questioning defendant on the unrelated murders since the record does not establish that defendant was actually represented or had requested counsel on the violation of probation charge (see, People v West, 81 NY2d 370, 377; People v Ruff, 81 NY2d 330, 333; People v Kazmarick, 52 NY2d 322; People v Dennis, 204 AD2d 812, 813, lv denied 84 NY2d 825). Accordingly, we conclude that defendant's statements were not admitted in violation of his constitutional right to counsel.

Turning to the arguments raised by defendant in his *pro se* supplemental brief, we first address defendant's contention that he was deprived of a fair trial by the admission of certain crime scene and autopsy photographs of the victims into evidence. We cannot say that County Court abused its discretion in determining that the probative value of the photographs outweighed their potential for prejudice since their depiction of the nature and manner of the killings tended to establish a material element of the charges of intentional murder, namely, whether defendant intended to kill the victims (*see*, Penal Law § 125.25 [1]; *People v Wood*, 79 NY2d 958, 960; *People v Pobliner*, 32 NY2d 356, 369-370, *cert denied* 416 US 905). Accordingly, we do not find error by their introduction.

Next, we hold that County Court was correct in precluding defense witness Darryl McCorkle from testifying. We note that "[t]he general rule is that a party may not introduce extrinsic evidence on a collateral matter solely to impeach credibility" (*People v Alvino*, 71 NY2d 233, 247). Here, in the absence of any evidence of alibi, the issue of when the bodies were discovered had no direct bearing on any issue in the case other than the credibility of Calvin Le Barron, Zurek's son-in-law. The matter was, therefore, collateral (*see*, *Badr v Hogan*, 75 NY2d 629, 635). Since McCorkle's testimony was proffered solely to impeach the credibility of Le Barron as to this collateral issue, it was properly excluded as violative of the general rule (*see*, *People v Alvino*, *supra*, at 247).

Furthermore, we find no merit to defendant's claim that an alleged underrepresentation of African Americans on the jury panel constituted a denial of his right "to be tried by a jury of his peers." We note that County Court conducted a hearing in response to the defense challenge to the panel of prospective trial jurors (*see*, CPL 270.10 [2]). Defendant, who bore the burden of demonstrating "that a substantial and identifiable segment of the community was not included in the jury pool based on a systematic exclusion of that group" (*People v Williams*, 256 AD2d 661, 663, *lv denied* 93 NY2d 981; *see*, *People v Guzman*, 60 NY2d 403, 409, *cert denied* 466 US 951), offered insufficient proof demonstrating "that the alleged underrepresentation was caused by intentional discrimination or that the jurors had been systematically excluded from the jury pool" (*People v Williams*, *supra*, at 663).

Finally, we find no error in County Court's refusal to suppress defendant's recorded telephone conversations with Jackson based upon lack of consent. According to Bruno's unrefuted testimony, Jackson agreed to the taping. Thus, the

interception of the telephone conversations was legally permissible (*see*, Penal Law § 250.00 [2], [6]; § 250.05; CPL 700.05 [1]; *People v Hills*, 176 AD2d 375).

We have examined defendant's remaining contentions and have determined that they are either unpreserved for our review or without merit.

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.