■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRESE HILLIARD, Appellant. [799 NYS2d 301]—

Spain, J. Appeals (1) from a judgment of the County Court of

Sullivan County (LaBuda, J.), rendered March 11, 2002, which revoked defendant's probation and imposed a sentence of imprisonment, and (2) from a judgment of said court, rendered August 1, 2002, upon a verdict convicting defendant of the crimes of murder in the second degree, robbery in the first degree (three counts), criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree and conspiracy in the fourth degree.

Defendant was convicted, following a jury trial, of felony murder, first degree robbery (three counts), weapons-related crimes, and conspiracy (to commit robbery). Sentenced to an aggregate prison term of 25 years to life on the murder, robbery and weapons counts and to a consecutive term of $1^1/_3$ to 4 years on the conspiracy count, defendant now appeals.

The charges stem from his participation, along with Sheldon Wells (*People v Wells*, 18 AD3d 1022 [2005]), Robert Dawson and Quinton Lawrence, in a planned September 18, 2001 late-night robbery of Arthur Hayes, in the hamlet of Mountaindale in the Town of Fallsburg, Sullivan County, during which Wells shot Hayes, instantly killing him. The trial evidence showed that when contacted by his friend, Christopher Beatty, defendant agreed to act as a middleman to assist Hayes in purchasing a large quantity of marihuana from local drug dealers. Defendant then conspired with Wells, Dawson and Lawrence to rob Hayes during a staged drug buy. Defendant obtained a loaded gun which he gave to Wells, and defendant drove Hayes to the location of the purported drug transaction, where Lawrence pretended to beat up defendant while Wells forcibly stole Hayes' money and then shot him in the back. Defendant fled to Beatty's house, telling him that unknown assailants had robbed him and Hayes. Around midnight, defendant, believed to be a victim and the only witness to the homicide, was stopped by police while driving. He voluntarily accompanied police to the Fallsburg police station. Between the hours of 2:00 A.M. and 11:00 P.M. on September 19, 2001, after repeated *Miranda* warnings, defendant gave numerous oral and three noncustodial written statements, voluntarily submitted to a polygraph test administered by the State Police, and consented to a search of his apartment.

On that same day, defendant's probation officer drafted a violation of probation (hereinafter VOP) petition containing several charges, which was filed with County Court and an arrest warrant was issued. At approximately 4:00 P.M., the petition and warrant were given to the Fallsburg police officers who were investigating the homicide and questioning defendant, but

he was not then arrested on that warrant. At approximately 11:00 P.M., after implicating himself in this conspiracy and homicide in his third written statement, defendant was arrested on the present charges. On September 28, 2001, before County Court held a suppression hearing on the conspiracy/homicide charges, defendant pleaded guilty to one of the charges contained in the VOP petition, namely, driving without a license. When sentenced, his probation was revoked and he received 1$\frac{1}{3}$ to 4 years in prison. Defendant also appeals from that judgment.

Addressing defendant's contentions regarding his criminal convictions, we are compelled to conclude that he is correct that County Court erred in denying his motion to suppress all of his oral and written statements to police which were made in the absence of counsel *after* his indelible right to counsel had attached upon the filing of the VOP petition. Under settled law, the state constitutional right to counsel indelibly attaches, and cannot be waived in the absence of counsel, in two situations, and this case concerns only the first situation: "[T]he right [to counsel] attaches indelibly upon the commencement of formal proceedings, whether or not the defendant has actually retained or requested a lawyer" (*People v West*, 81 NY2d 370, 373-374 [1993]; *see People v Samuels*, 49 NY2d 218, 221-223 [1980]; *People v Settles*, 46 NY2d 154, 162-166 [1978]; *see also People v Ramos*, 99 NY2d 27, 32-33 [2002]; *People v Cunningham*, 49 NY2d 203, 209-210 [1980]; *People v Di Biasi*, 7 NY2d 544, 549-551 [1960]; *cf. People v Lane*, 64 NY2d 1047, 1048 [1985]). A criminal action commences with the filing of an accusatory instrument with the court (*see* CPL 1.20 [1], [17]; *see also People v Samuels, supra* at 221). In *People v Blanchard* (279 AD2d 808 [2001], *lv denied* 96 NY2d 826 [2001]), this Court—relying on *People v Samuels* (*supra*)—held that "the right [to counsel] indelibly attached on the violation of probation charge when the instrument [i.e., the VOP petition] was filed with the court and the arrest warrant issued" (*People v Blanchard, supra* at 810). While holding that defendant's right had indelibly attached on the VOP charge, we recognized that "the pendency of that charge did not, by itself, bar the police from questioning defendant on the *unrelated murders*" (*id.* [emphasis added]). *Blanchard* thus followed a line of Court of Appeals precedents holding that when, as in the case sub judice, the right to counsel arises solely due to the commencement of formal proceedings (i.e., the suspect is not represented on pending charges and does not request counsel while in custody), police may question a suspect on an *unrelated* matter in the absence of counsel (*see People v Ruff*, 81 NY2d 330, 333-334 [1993]; *People v Kazmarick*,

52 NY2d 322, 327-328 [1981]; *People v Samuels, supra* at 222-223; *People v Harvey*, 273 AD2d 604, 605 [2000], *lv denied* 95 NY2d 964 [2000]; *People v Wergen*, 250 AD2d 1006, 1007 [1998]; *People v Dennis*, 204 AD2d 812, 813 [1994], *lv denied* 84 NY2d 825 [1994]).

Here, applying *Blanchard*, defendant's indelible right to counsel attached upon the filing of the VOP petition and issuance of the arrest warrant. The dispositive issue on defendant's suppression motion, then, is whether police questioning thereafter concerned a "related" or "unrelated" matter. We find the conclusion to be inescapable that the VOP petition and subsequent homicide questioning were related and substantially overlapped, requiring suppression of all of defendant's statements during questioning after his right to counsel had indelibly attached.

A review of the VOP petition in the record[1] reflects that it particularized, as the conditions violated, the following: "Lead a Law Abiding life. [Do] not violate any federal state or local laws AND . . . Avoid injurious or vicious habits." The petition then recited: "In the evening hours of September 18, 2001, in Mountaindale, NY, [defendant] was present at a botched drug buy in which an individual in the company of the [defendant] was shot and fatally wounded." The petition then detailed the discovery by police of marihuana and related paraphernalia during the consent search of defendant's apartment in the early morning hours of September 19, 2001.[2] The petition also specified that, on that day, defendant had admitted to his probation officer and a probation supervisor "that he had driven his sister's automobile *on the night of the above offense*" (emphasis added). The petition then specified a third numbered condition violated, namely, that he "promptly notify the probation officer of any changes in address or employment," specifying defendant had admitted failing to provide a new address.

In our view, the VOP petition did not, as the People argue, merely charge matters "unrelated" to the ongoing homicide investigation. The language of the petition itself utterly belies the People's claim that it concerned only "vehicle and traffic matters." Neither the fact that defendant ultimately pleaded guilty to only that portion of the VOP petition that alleged his driving without a license, nor the fact that police did not question him about those probation matters, undermines the conclusion that the questioning of defendant about the homicide

---

1. It is not clear if the two page VOP petition in defendant's appendix and also in the record on appeal is complete.

2. Defendant was apparently never charged in relation to that discovery.

concerned a matter "related" to the allegations in the VOP petition, in violation of defendant's indelible right to counsel, requiring suppression (*cf. People v Ruff, supra; People v Kazmarick, supra; People v Samuels, supra* at 223; *People v Blanchard, supra; People v Dennis, supra*). Likewise, the fact that the probation supervisor testified that his officers did not question defendant about the homicide at that time, and his characterization that defendant was only being violated on the unlicensed driving and address change charges, are not determinative, as "[a] person's right to counsel cannot hinge on the government's characterization of its own investigation" (*People v Greene*, 306 AD2d 639, 641 [2003], *lv denied* 100 NY2d 594 [2003]).

Also, the conclusion that defendant's right to counsel was violated cannot be avoided, as the People suggest, by the simple expedient of labeling the homicide references in the VOP petition as merely the "factual portion" and not the actual "charges." In addition to reciting defendant's presence at the fatal, botched robbery, the VOP petition specified both defendant's admission to driving his sister's car "on the night of the above offense" and his lack of a license. Clearly, while not directly charging defendant with commission of the homicide, the petition alleged his presence at that offense and, inescapably, the petition did not encompass a matter sufficiently "unrelated" to the subsequent homicide questioning so as to permit the continuation of the questioning in the absence of counsel.

While recognizing that probation officers drafted and filed the VOP petition, apparently not reviewed by the many police officers or the District Attorney involved in the ongoing homicide investigation, we are constrained to conclude that defendant's right to counsel indelibly attached on all of the VOP allegations when the petition was filed and the arrest warrant issued (*see People v Samuels, supra; People v Blanchard, supra*). Further, the pendency of those charges precluded police from questioning defendant on the related homicide matters, requiring suppression of all statements made to police after that right had attached (*cf. People v Ruff, supra; People v Blanchard, supra*).

We are unable to conclude that the admission of defendant's oral and written statements, taken in violation of his right to counsel, was harmless error. In defendant's first statement—an admissible statement—to police taken around 2:00 A.M., he claimed to have acted as a middleman in Hayes' drug purchase, but stated that while they waited for the drug sellers to arrive they were attacked by unknown assailants, who shot Hayes. This is the account that defendant gave to Beatty immediately

thereafter. However, in the second statement to police, around 6:30 P.M.—subsequent to the filing of the VOP petition—defendant admitted knowing the assailants, identified as Wells and Lawrence; Wells had been in a vehicle following defendant when they were stopped by police, raising suspicion about defendant's account of being victimized in this incident. Finally, in his third statement to police, defendant admitted providing the loaded gun to Wells, conspiring to rob Hayes, and his role in the execution of the plan to make it appear like a robbery gone bad, during which Hayes was killed. While Lawrence (who pretended to beat up defendant as part of the robbery plan) and Dawson (the coconspirator, get-away driver) testified, offering eyewitness accounts which were essentially the same as defendant's now suppressed incriminating statements, both accomplices testified pursuant to advantageous plea agreements. Beatty was not an eyewitness to the shooting or aware of the plans to rob Hayes and, thus, was only able to testify to defendant arranging the drug sale between Hayes and others. Thus, we can only conclude that the admission into evidence of defendant's oral and written statements confessing his role in these crimes was reversible error, as there is a reasonable possibility that these statements contributed to defendant's conviction and it cannot be said that it was harmless beyond a reasonable doubt (*see People v Crimmins*, 36 NY2d 230, 237 [1975]).[3]

Finally, however, we reject defendant's contention that the violation of his right to counsel requires reversal of the judgment revoking probation and imposing sentence. Most notably, defendant, while represented by counsel, voluntarily entered a plea of guilty in September 2001 to violating probation by driving without a license and was sentenced on that plea prior to the suppression hearing, and, thus, it cannot be said that County Court's *subsequent* erroneous denial of his suppression motion in the criminal proceeding affected his earlier decision to plead guilty to the probation violation.

---

**3.** Alternately, defendant moved to suppress his statements to police on involuntariness grounds. Defendant's oral and written statements to police after his right to counsel attached are suppressed and may not be used at any retrial. With regard to defendant's first written statement to police and oral statements he made to police *prior to* the attachment of his right to counsel, defendant's appellate brief does not pursue any claim that they were involuntary and, thus, this issue is abandoned (*see People v Purcelle*, 282 AD2d 824, 825 [2001]). In any event, we agree with County Court's *Huntley* ruling that, despite the length of the periodic questioning, defendant's statements were cooperative, voluntary, noncustodial and—after repeated *Miranda* warnings—admissible (*see People v Rivenburgh*, 1 AD3d 696, 698 [2003], *lv denied* 1 NY3d 579 [2003]; *see also People v Centano*, 76 NY2d 837, 838 [1990]; *People v Williams*, 62 NY2d 285, 289 [1984]; *People v Yukl*, 25 NY2d 585, 589 [1969]).

Defendant's remaining contentions, some of which are unpreserved, also lack merit.

Mercure, J.P., Crew III, Peters and Kane, JJ., concur. Ordered that the judgment rendered March 11, 2002 is affirmed. Ordered that the judgment rendered August 1, 2002 is reversed, on the law, motion to suppress statements made after defendant's right to counsel attached granted and matter remitted to the County Court of Sullivan County for a new trial.