OPINION OF THE COURT
Robert J. Collini, J.
*533 The defendant is charged with four counts of murder in the second degree and various other offenses. All charges relate to the shooting death of Samuel Amaker on February 12, 2004.
A Huntley hearing was conducted on April 19, 2005, at which the People called only one witness, Detective Robert Rivera.[1] The court found his testimony to be credible and rehable.
Findings of Fact
An eyewitness told police that she had been sleeping in Samuel Amaker’s apartment, on Pacific Street in Brooklyn, New York, when Mr. Amaker responded to a knock at the door. Shortly thereafter, the eyewitness heard several gunshots and the voices of three individuals. She recognized one of the voices as belonging to a woman she knew as “Shatisha.” The eyewitness did not recognize the voices of the two other intruders, although she could identify them as male. After hearing the shots, she hid behind the bathroom door. While hiding behind the door, two males entered with guns in their hands and pointed them at her. “Shatisha” ordered the gunmen not to shoot and they complied with her request, lowered their weapons and walked out of the bathroom. The two gunmen and “Shatisha” then fled from the scene.
The following day, after being presented with a photo array by Detective Lopez, the eyewitness identified the defendant, Collins Miller, as one of the two men who had pointed guns at her in the bathroom.
The New York City Police Department (NYPD) did not issue a warrant for Miller’s arrest.[2] Subsequently, a federal warrant for Mr. Miller’s arrest was issued for violating the terms of his probation as a result of his failure to comply with the terms of his drug treatment program. On May 4, 2004, NYPD Detectives Robert Rivera and Kevin Smith traveled to Dayton, Ohio, where the United States Marshals office executed the federal arrest warrant at 802 Goodlow Street.[3] The officials entered the dwelling with a battering ram and apprehended the defendant. He *534 was then taken to the United States Marshals office for questioning.
Upon entering the United States Marshals facility, Mr. Miller was read his Miranda warnings by NYPD Detective Rivera from a federal marshal’s warnings card. After being read his Miranda warnings, Mr. Miller signed the warnings card and stated that he was willing to speak with the detectives.
Detectives Rivera and Smith then questioned Mr. Miller, who made certain inculpatory statements. The defendant now seeks to suppress these statements.
Conclusions of Law
It is well established that New York’s “right to counsel” rule offers greater protection than its federal counterpart (People v Harris, 77 NY2d 434, 437 [1991]).
Under both federal and New York state law, the right to counsel attaches once criminal proceedings have commenced (Kirby v Illinois, 406 US 682, 689-690 [1972]; People v Samuels, 49 NY2d 218, 221 [1980]). However, federal and state laws differ on when criminal proceedings begin, effectively creating different “triggers” in each jurisdiction.
Under the CPL, an arrest warrant may not be issued until an accusatory instrument has been filed (CPL 120.20 [1]). Therefore, in New York, an individual’s right to counsel attaches at the same time that an arrest warrant would be authorized (Harris, 77 NY2d at 440).
Under New York law, the state constitutional right to counsel indelibly attaches, and cannot be waived in the absence of counsel, “upon the commencement of formal proceedings, whether or not the defendant has actually retained or requested a lawyer” (People v West, 81 NY2d 370, 373 [1993]; see also Samuels, 49 NY2d at 221-223; People v Settles, 46 NY2d 154, 162-166 [1978]).
The Criminal Procedure Law delineates when criminal proceedings commence: “A criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court, and, if more than one accusatory instrument is filed in the course of the action, it commences when the first of such instruments is filed.” (CPL 1.20 [17]; Samuels, 49 NY2d at 221.)
While New York law defines the commencement of a criminal action by statute, the federal courts have held that the right to *535 counsel attaches only at or after the initiation of adversary judicial proceedings (Powell v Alabama, 287 US 45, 57 [1932]). The federal courts have narrowly defined the initiation of adversary judicial proceedings as including: formal charge, preliminary hearing, indictment, information, or arraignment (Kirby v Illinois, 406 US 682, 689 [1972]). The United States Supreme Court clarified the limitations of an individual’s right to counsel by announcing when federal criminal proceedings “commence”
“[t]he initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified.” (Id.)
In Kirby, the Supreme Court limited the commencement of criminal proceedings to instances where the government has committed itself to prosecute (id.). Accordingly, under the federal rule, law enforcement may interrogate a suspect in the absence of a lawyer without violating that suspect’s right to counsel even if the arrest is made pursuant to a warrant (United States v Pace, 833 F2d 1307, 1310-1312 [1987], cert denied 486 US 1011 [1988]; United States v Reynolds, 762 F2d 489, 493 [1985]).
To summarize, in New York, criminal proceedings must be instituted before police can obtain an arrest warrant (Harris, 77 NY2d at 440). The federal requirements for the issuance of a warrant do not require criminal proceedings to have commenced (Pace, 833 F2d at 1310-1312; Reynolds, 762 F2d at 493). Since the issuance of a federal arrest warrant does not trigger the commencement of state criminal proceedings, it does not invoke New York’s right to counsel rule (Harris, 11 NY2d at 439-440).
The defendant argues that, because a federal arrest warrant was issued, Mr. Miller’s statements to NYPD detectives should be suppressed as violative of New York’s more protective right to counsel rule. Although defendant correctly contends that under People v Griminger (71 NY2d 635 [1988]) New York affords search and seizure protections beyond those which the federal law provides, Griminger does not stand for the proposition that New York’s right to counsel protections are triggered *536 by the filing of a federal arrest warrant.[4] Griminger merely upholds New York’s use of the Aguilar-Spinelli test in evaluating the sufficiency of an affidavit submitted in support of a search warrant application, after the federal courts had enacted a less stringent totality of the circumstances test.[5] The Court of Appeals further held that, despite a federal search warrant being issued, New York law applied in the state criminal prosecution against the defendant.
The defendant’s reliance on Griminger is misplaced, however, because he was not denied any of his rights proscribed under the New York Constitution. New York’s right to counsel attaches only when criminal proceedings have commenced. The issuance of a federal warrant, for an unrelated charge, does not commence a local murder prosecution, which was the subject of the detectives’ questioning (People v Kazmarick, 52 NY2d 322, 324-325 [1981]).
The defendant’s position would be more compelling if New York State had filed a violation of probation petition against the defendant on the basis of the murder charges or if the NYPD detectives had questioned the defendant on the same subject matter that the federal probation warrant was issued upon.
In People v Blanchard (279 AD2d 808 [3d Dept 2001], lv denied 96 NY2d 826 [2001]), an arrest was made pursuant to an outstanding warrant for a violation of New York state probation (id.). After the arrest, the defendant made oral and written statements implicating himself in an unrelated homicide (id.). The Appellate Division, Third Department, ruled that an arrest made pursuant to a violation of probation did not invoke New York’s right to counsel on the unrelated charge (id. at 810). The Court held that criminal proceedings had not begun on the ho *537 micide, despite a state arrest warrant being executed for the unrelated violation of probation.
In a recent case decided by the Third Department (People v Hilliard, 20 AD3d 674 [3d Dept 2005]), the defendant was a participant in a staged drug sale that resulted in a murder. The police picked him up under the mistaken belief that he was a victim of the robbery and a witness to the homicide. The defendant voluntarily went to the police precinct, waived his Miranda rights, made a series of statements and took a polygraph test. At the same time, the defendant’s New York state probation officer filed a violation of probation petition in County Court and an arrest warrant was issued. At 4:00 p.m., the petition and arrest warrant were given to the officers who were investigating the homicide and questioning the defendant. The police did not stop questioning the defendant, nor did they arrest him on the violation of probation arrest warrant, until 11:00 p.m., after the defendant had made a statement inculpating himself in the felony murder.
In reversing the conviction and suppressing the inculpatory statement, the Third Department, citing and quoting People v Blanchard (279 AD2d 808 [2001]), held that:
“ ‘[T]he right [to counsel] indelibly attached on the violation of probation charge when the instrument [i.e., the VOP petition] was filed with the court and the arrest warrant issued’ . . . While holding that defendant’s right had indelibly attached on the VOP charge, we recognized that ‘the pendency of that charge did not, by itself, bar the police from questioning defendant on the unrelated murders' .... Blanchard thus followed a line of Court of Appeals precedents holding that when, as in the case sub judice, the right to counsel arises solely due to the commencement of formal proceedings (i.e., the suspect is not represented on pending charges and does not request counsel while in custody), police may question a suspect on an unrelated matter in the absence of counsel (see People v Ruff, 81 NY2d 330, 333-334 [1993]; People v Kazmarick, 52 NY2d 322, 327-328 [1981]; People v Samuels, supra at 222-223 .. . ).” (People v Hilliard, 20 AD3d 674, 676-677 [2005].)
In other words, if the defendant was on New York state probation and if his probation officer had filed a violation of probation petition based on the defendant’s alleged involvement in *538 the murder of Samuel Amaker, the police would have been prohibited from questioning the defendant on any subject related to the violation of probation petition.
However, in this case, a federal, not a state, probation warrant was issued because the defendant violated terms of his federal drug treatment program, a charge that was unrelated to the shooting death of Samuel Amaker. The issuance of a federal arrest warrant, under these circumstances, did not serve to commence the criminal proceedings pertaining to the topic upon which the NYPD detectives questioned the defendant (Kazmarick, 52 NY2d at 324).
As the defendant correctly notes, the defendant spent only a short period of time in federal custody before he was handed over to the NYPD detectives for questioning (defendant’s mem of law at 2). However, the defense has made no allegation, and no evidence was presented, that the defendant’s arrest by federal authorities was merely a pretext to avoid New York’s more stringent right to counsel rule.[6]
Even if the issuance of a federal probation warrant was merely a pretext to permit the NYPD to question the defendant about an open homicide, the defendant would still be without a remedy (see People v Hawkins, 55 NY2d 474, 487-488 [1982]; Kazmarick, 52 NY2d at 324-325). Under New York’s right to counsel law:
“A pending unrelated criminal case upon which an arrest warrant has issued does not bar the police from questioning a suspect when the suspect does not in fact have counsel on the unrelated charge. Although the right to counsel on the unrelated charge indelibly attaches upon the issuance of an accusatory instrument or warrant on that charge . . . the unrelated charge is pertinent to the suspect’s right to counsel on a new charge only if the suspect is in fact represented by counsel on the unrelated charge.” (Kazmarick, 52 NY2d at 324.)
Had Mr. Miller already had legal representation, or if he had requested legal representation in the federal violation of probation matter, then the analysis of defendant’s New York right to *539 counsel would have been different[7] (People v West, 81 NY2d 370, 377 [1993]; see also People v Dennis, 204 AD2d 812, 813 [1994], lv denied 84 NY2d 825 [1994]). However, no evidence was presented that Mr. Miller either requested legal representation or had counsel appear on his behalf with respect to the violation of probation.
Accordingly, defendant’s motion to suppress the statements made to Detectives Rivera and Smith is denied.[8]

. The DunawaylMapp/Wade portion of the hearing was conducted and decided on March 22, 2005.

. Detective Rivera stated that he did not seek an arrest warrant because, under his understanding of the law, the police would not be entitled to question the defendant, without an attorney being present, if such a warrant had been issued (transcript at 58).

. Present at 802 Goodlow at the time of arrest were Detectives Smith and Rivera of the NYPD, Sergeant Coen of the NYPD, and various members of the United States Marshals office.

. In Griminger, the Court of Appeals adopted the Aguilar-Spinelli (Aguilar v Texas, 378 US 108 [1964]; Spinelli v United States, 393 US 410 [1969]) two-prong test to determine probable cause based on a determination as to the veracity or reliability of the source of the information and the basis for that source’s knowledge, as opposed to the Gates (Illinois v Gates, 462 US 213 [1983]) totality of the circumstances test. The Aguilar-Spinelli test offers a more stringent examination in evaluating hearsay information.

. In Griminger, the defendant’s New York rights were determined to be compromised when a less stringent federal requirement for evaluating hearsay information from an undisclosed informant was utilized to issue a search warrant (71 NY2d at 639-640). Under the stricter New York state requirement for evaluating hearsay information, the search warrant obtained from the federal magistrate would not have been authorized (id.). Therefore, the issuance of such a search warrant was in violation of that defendant’s rights protected by the New York State Constitution (id. at 641).

. (See n 3.) Although Detective Rivera knew that he could not question the defendant if state proceedings had commenced, no evidence was presented that the issuance of a warrant for the alleged violation of federal probation was merely a pretext to aid the state murder investigation.

. People v West clarified the Rogers rule (People v Rogers, 48 NY2d 167 [1979]) by explaining that the right to counsel on one matter does not trigger for another charge merely upon commencement of criminal proceedings on the unrelated charge. Rather, the right to counsel triggers for an unrelated charge only if counsel actually appears on the matter or if the defendant requests legal representation on the unrelated charge.

. No issue was raised during the course of this hearing regarding the voluntariness of the defendant’s statement, nor asserting a violation of the defendant’s due process rights.