OPINION OF THE COURT
Chief Judge Kaye.
A defendant’s State constitutional right to counsel "indelibly attaches” upon actual representation in a criminal matter. *372 The question before us on this appeal — where defendant’s right to counsel unquestionably attached by virtue of counsel’s representation of him in the matter at issue — is what indelible attachment means in those circumstances.
Defendant, along with twin brothers Michael and Mark Davenport, was part of a drug operation based in a house on West 116th Street in Manhattan. On February 15, 1982, a fight broke out in front of the house during which Sylvester Coleman was shot and killed. On June 30, 1982, the police placed defendant in a lineup in connection with the shooting. Defendant was at that time represented by counsel. The People do not dispute that counsel’s presence was recorded in the police file on this matter, and that counsel instructed defendant was not to be questioned in his absence. The results of the lineup were inconclusive and defendant was not charged at that time.
Some three years later, Michael Davenport was arrested in connection with unrelated crimes, admitted that he was one of the gunmen in the Coleman slaying, identified defendant as another, and signed a cooperation agreement with the District Attorney in exchange for leniency. In December 1985 and January 1986, at the direction of law enforcement officials and in an effort to help his brother, Mark Davenport surreptitiously tape-recorded several conversations with defendant. Before arranging for these conversations, the police made no attempt to determine whether defendant was still represented by his lawyer. In the taped conversations, defendant made statements consistent with guilt, and was thereafter indicted for murder.
Prior to trial, defendant’s attorney — the same attorney who had represented him at the lineup — moved to suppress the taped statements, claiming they were taken in violation of defendant’s right to counsel. The People responded that, more than three years after the lineup, the police had no reason to believe the representation continued, and defendant’s papers did not allege that he was in fact still represented at the time of the tape-recording. Supreme Court summarily denied suppression.
Defendant’s taped statements figured prominently in the prosecution’s trial presentation. The prosecution’s other primary evidence came from three interested witnesses: Mark Davenport, Michael Davenport and Thomas Kelly, a known heroin user and frequent customer of the drug organization. *373 The tape was played during the People’s direct case accompanied by Mark Davenport’s testimony and was replayed during the People’s summation accompanied by an explanation of how it demonstrated defendant’s guilt. Before returning a guilty verdict, the jury twice requested that a portion of the tape be played again and asked for a copy of the cooperation agreement between the District Attorney and Michael Davenport.
The Appellate Division affirmed the conviction, reasoning that the investigation for which defendant had obtained counsel had been terminated and that the taped statements were made as part of a new investigation. The Appellate Division also considered it significant that the taped conversations were noncustodial. We disagree, concluding that the taped statements were taken in violation of defendant’s right to counsel, their use cannot be deemed harmless, and a new trial is required.
I.
The State right to counsel is a " 'cherished principle’, rooted in this State’s prerevolutionary constitutional law and developed 'independent of its Federal counterpart.’ ” (People v Harris, 77 NY2d 434, 439 [quoting People v Settles, 46 NY2d 154, 160-161].) "The 'highest degree of [judicial] vigilance’ is required to 'safeguard’ it.” (People v Harris, 77 NY2d, at 439 [quoting People v Cunningham, 49 NY2d 203, 207].)
The State right to counsel attaches indelibly in two situations.
First, the right attaches indelibly upon the commencement of formal proceedings, whether or not the defendant has actually retained or requested a lawyer (see, e.g., People v Samuels, 49 NY2d 218; People v Settles, 46 NY2d 154, supra; People v Di Biasi, 7 NY2d 544; see also, Kirby v Illinois, 406 US 682 [parallel Federal right]). Underlying this principle— the "Di Biasi line of cases” — is a recognition that once formal proceedings have commenced, the character of the matter changes from investigatory to accusatory. The right to counsel both protects the accused in dealing with the coercive power of the State and insures that any waiver of the right will be knowing and intelligent (People v Settles, 46 NY2d, at 163-164).
Second, the right to counsel attaches indelibly where an uncharged individual has actually retained a lawyer in the *374 matter at issue or, while in custody, has requested a lawyer in that matter (People v Skinner, 52 NY2d 24, 26; People v Cunningham, 49 NY2d 203, 209; People v Hobson, 39 NY2d 479, 481; People v Arthur, 22 NY2d 325, 329). The rationale underlying this "Hobson line of cases” is much the same as that underlying the Di Biasi line of cases (see, People v Hobson, 39 NY2d, at 485-486). Suspects under the Hobson line have manifested their belief that they cannot alone deal with the State’s coercive power. The right to counsel helps to equalize the balance and assure that any waiver is knowing and intelligent (People v Skinner, 52 NY2d, at 29-32; People v Cunningham, 49 NY2d, at 207-208; People v Hobson, 39 NY2d, at 484). Additionally, the right protects against undue interference with any existing attorney-client relationship (see, e.g., People v Skinner, 52 NY2d, at 29-30).
A. Representation by Counsel in the Matter at Issue
This case concerns the second situation — in particular, indelible attachment of the right to counsel by actual representation in the matter at issue. We agree unanimously that defendant’s right to counsel attached indelibly when counsel entered his appearance at the lineup and instructed the police not to question his client. We differ as to the significance of that right.
The majority, applying long-settled law, concludes that indelible attachment of the right to counsel means that a suspect cannot be questioned about the matter without counsel, and that defendant’s right was violated by the covert interrogation. The dissent, drawing a new distinction, concludes that where the right to counsel arises from representation in a matter, no violation results from covert police questioning about the same matter unless defendant establishes that the attorney-client relationship existed at the moment of questioning. A brief review confirms that the dissent’s purported distinction is without basis.
The rule that an uncharged represented individual cannot be questioned without counsel originated in the context of custodial interrogation, and was explicitly premised on grounds identified in Di Biasi: the need to protect accuseds against the coercive power of the State and promote knowing and intelligent waivers (see, People v Hobson, 39 NY2d, at 485-487). The Hobson rule additionally protected the attorney-client relationship from undue interference (id., at 484). After Hobson, we recognized that the right to counsel attached *375 where an uncharged suspect in custody asked for a lawyer (People v Cunningham, 49 NY2d, at 208). We reasoned that an individual in custody who expressed the need for counsel stood in the same shoes as one who had actually retained counsel for protection against the State — both having manifested an inability to deal with the State without counsel on the matter in issue — and the State cannot thereafter seek a waiver outside counsel’s presence.
We next applied the principle to noncustodial questioning (People v Skinner, 52 NY2d, at 28). In Skinner, the defendant was initially questioned immediately after a murder, and then repeatedly questioned over the next few months, prompting him to retain an attorney who instructed the police not to question his client. After a hiatus of approximately two years, the police served the attorney with an order compelling defendant to appear in a lineup, whereupon the attorney again instructed the police not to question his client in his absence. Nonetheless, the police personally served defendant with the order and at the same time asked defendant if he wanted to tell them anything, whereupon defendant made incriminating statements.
We granted suppression of defendant’s statements. We concluded that even in a noncustodial setting, by retaining an attorney in response to police-initiated contacts about a particular matter, defendant manifested his belief that he was unable to deal with the coercive power of the authorities without legal assistance and the State could not derogate that right by subjecting the individual to questioning (People v Skinner, 52 NY2d, at 32). Further, the questioning interfered with the attorney-client relationship (id., at 32).
In People v Knapp (57 NY2d 161, 174, cert denied 462 US 1106), the police — as here — used an informant to obtain uncounseled statements from defendant. Applying Skinner, we reaffirmed the prohibition against noncustodial questioning of a represented suspect even where the suspect did not know the State was questioning him.[1]
Thus, it is clear that "indelible attachment” has a common foundation and significance whether the right arises from the commencement of formal proceedings or actual representation *376 in the matter at issue. Once a suspect has obtained representation in the matter at issue, the suspect in a real sense has "activated his constitutional right to interpose an attorney between himself and the overwhelming power of the State.” (People v Skinner, 52 NY2d, at 32.)
A suspect whose right has indelibly attached has no obligation to keep the police informed as to the status of the attorney-client relationship. Should the police wish to question defendant without counsel on the same matter after the right has attached, it is as a rule their burden to determine whether representation continues (People v Marrero, 51 NY2d 56, 59).
In Marrero, the defendant was represented by counsel only for the purposes of arranging surrender and was not actually represented during police questioning. Nonetheless, since defendant’s indelible right to counsel attached when his attorney first appeared, his statements were suppressed:
"Once an attorney has appeared on the defendant’s behalf we have refused to allow the police to rely on arguable ambiguities in the attorney-client relationship in order to justify police questioning of the defendant without the attorney being present * * * We have indicated that if the police are uncertain as to the scope of the attorney’s representation, the defendant should not be questioned * * * Because of the limited and unusual arrangement the attorney had made with the defendant, that representation may actually have terminated prior to the questioning. But there was no finding that the police were aware of that peculiar arrangement.” (Id., at 59 [citations omitted].)[2]
*377 B. Representation by Counsel in Other Matters
An entirely different situation exists when the defendant is unrepresented in the matter at issue but has counsel in an unrelated matter. Then, the question is whether a right to counsel attaches in the matter at issue simply by virtue of defendant’s representation in the unrelated matter. These cases, which are the core of the dissent’s new rule, are plainly inapposite here.
Initially, a suspect represented in an unrelated matter could be questioned about matters in which the suspect was not represented (see, People v Taylor, 27 NY2d 327, 330-332). That rule proved difficult to apply, however, where questioning on the unrepresented matter overlapped with questioning on represented matters. In People v Ermo (47 NY2d 863), for instance, we suppressed statements made on an unrepresented matter that were obtained by police exploitation of statements made on charges where defendant was represented by counsel (see also, People v Carl, 46 NY2d 806). Thereafter, in People v Rogers (48 NY2d 167), we held that once an attorney had entered a proceeding, thereby signifying that the police should cease questioning, a defendant in custody on that matter could not be further interrogated in the absence of counsel, whether or not the interrogation concerned the represented matter (id., at 169; see also, People v Bing, 76 NY2d 331, 340, 350).
It is the Rogers right that is solely "concerned with protection of an existing attorney-client relationship” (People v Robles, 72 NY2d 689, 698 [emphasis added]; compare, dissenting opn, at 383). Indeed, under Rogers, a right to counsel in a matter in which defendant is not represented arises in the first instance only because of defendant’s actual representation in another matter. Therefore, if the representation in the other, unrelated matter ceases prior to questioning in the matter at issue, the Rogers right does not attach (People v Robles, 72 NY2d, at 698; People v Kazmarick, 52 NY2d 322). Likewise, if at the time of questioning, the accused is not actually represented in the unrelated matter — for example, if the right to counsel had attached solely because of the commencement of formal proceedings — no Rogers right arises. It is in this context only that we concluded: "[s]imply put, the legal fiction of representation indulged by the [Di BiasiJ line of cases is not tantamount to the actual or requested representation protected by the Rogers-Cunningham line.” (People v Kazmarick, 52 NY2d, at 328; see also, People v Ruff, 81 NY2d *378 330 [decided today]; People v Rosa, 65 NY2d 380, 385; compare, dissenting opn, at 383.)
After Rogers, a broader rule developed that prohibited police questioning whenever a defendant had counsel in a unrelated matter (see, People v Bartolomeo, 53 NY2d 225, 232, overruled People v Bing, 76 NY2d, at 341-342). Like Rogers, this right was derivative and dependent on the actual existence of an attorney-client relationship. Unlike Rogers, the Bartolomeo right could attach without police awareness of the unrelated representation. From the start, therefore, the Bartolomeo right was problematic (see, People v Bing, 76 NY2d, at 341-342).
Under Bartolomeo, the police were obliged to inquire whether a suspect was represented in any unrelated matter of which they had knowledge. Failing such inquiry, the police were bound by what such inquiry would have revealed — meaning the derivative right could attach without actual knowledge that the suspect was represented by counsel at all. Indeed, that was the case in Bartolomeo itself, where the police questioning defendant had no knowledge of his representation in an unrelated matter, yet were charged with having violated defendant’s derivative right (People v Bartolomeo, 53 NY2d, at 230-232).
Recognizing the potential breadth and undue societal cost of Bartolomeo, we first confined the rule. We required inquiry only where the police had actual knowledge of the prior pending charge (People v Bertolo, 65 NY2d 111, 117; People v Fuschino, 59 NY2d 91, 98). We permitted the police to accept at face value a defendant’s claim that he was not represented (People v Lucarano, 61 NY2d 138, 145). We placed on defendant the burden of proving the existence of the representation giving rise to the derivative attachment (People v Rosa, 65 NY2d 380, 386-387). Ultimately, however, we concluded that the societal cost could not be justified, and overruled Bartolomeo (People v Bing, 76 NY2d, at 349).
The dissent distorts our precedents by suggesting that defendant must prove actual representation "at the time of interrogation” (dissenting opn, at 384 and 385). The issue in the cases cited by the dissent for such a requirement — People v Rosa (65 NY2d 380), People v Kinchen (60 NY2d 772), People v Kazmarick (52 NY2d 322, supra), People v De Mauro (48 NY2d 892) and People v Jones (114 AD2d 974) — was whether the right to counsel had attached at all in the matter about *379 which defendant was questioned. Each defendant in those cases asserted that the right attached because he was actually represented at the time of interrogation; indeed, in all but De Mauro the asserted representation was in an unrelated case. The quoted words "at the time of interrogation” did not add a timing requirement to the law, but simply addressed those defendants’ assertions as to when their right attached. No such dispute is presented here.
Thus, the cases relied on by the dissent are plainly inapposite. They are concerned only with whether the right to counsel attached in the first instance. Here we have no such concern. There is no question that defendant was represented in the matter at issue, and no question that his right to counsel attached indelibly.[3]
II.
Applying the relevant precedents to the facts at hand, we conclude that defendant’s right to counsel was violated when the police sent an informant to surreptitiously record incriminating statements about the counseled matter without regard to their knowledge that defendant had a lawyer in the case. Unlike Skinner, where the police notified counsel that their investigation was resuming after a two-year break, here the police sidestepped counsel, whose appearance was reflected in their files. Law enforcement officials, however, could not sidestep defendant’s constitutional rights by failing to inquire whether the attorney-client relationship continued with respect to the very matter under investigation (see, Skinner, 52 NY2d, at 32, n 3).
The People argue that they were justified in assuming the relationship ceased because more than three years had elapsed from counsel’s appearance. Mere passage of this period of time, however, did not eradicate defendant’s indelible *380 right. Indeed, several of our right to counsel cases, including Skinner itself, involved questioning that arose after an extended hiatus (see, People v Miller, 54 NY2d 616, 618 [one year]; People v Skinner, 52 NY2d, at 27 [two years]; People v Singer, 44 NY2d 241, 249-251 [three years]). Nor is it material that the 1985 investigation was considered by the People "for all intents and purposes, a new investigation.” Defendant’s right to counsel cannot turn on police characterization of their own investigation of a particular crime. Absent some indication that the representation had ceased, the police could not question defendant concerning the very matter as to which they knew he had a lawyer (see, People v Marrero, 51 NY2d 56, 59, supra).
Our holding does not establish a new standard of strict liability (dissenting opn, at 388), but follows on the established proposition that law enforcement officials who know that a right to counsel has indelibly attached may not question individuals on that matter without counsel. The fundamental premise, of course, is that the right to counsel has attached in the first instance — whether by the commencement of formal proceedings, by actual representation, or by a suspect’s request for counsel while in custody.
It is indeed the dissent that seeks to open a new byway in the law, relying on cases dealing with a derivative right to urge that indelible attachment means something different when it arises from actual representation in a matter. The dissent’s new standard unduly derogates the cherished right to counsel, allowing the police to question a client even immediately after learning of representation in the matter, gambling that the attorney-client relationship may have terminated, with the legality of their actions tested (if at all) only after the fact. We have never condoned such a "license to play fast and loose with this precious right” (People v Ramos, 40 NY2d, at 618). It is indeed the antithesis of our declared commitment to safeguard the right to counsel with the highest degree of vigilance.
We therefore conclude that the police were not free to disregard counsel’s instruction. Should the police have desired to question after defendant’s right had attached, it was their burden to determine whether the attorney-client relationship had terminated.
Contrary to the dissent’s repeated assertion, we do not hold that the right to counsel is interminable. This is not a case *381 where the police, at the time they arranged for secret tape-recordings, had any reason to believe that a known attorney-client relationship in the matter had ceased. If indeed it had been shown that defendant’s lawyer had died, been disbarred, withdrawn, or terminated the relationship because of a conflict of interest (dissenting opn, at 390), the case would be a different one. No such proof was offered. In fact, the same lawyer represented defendant at the lineup and the suppression hearing. The People advance only the passage of three years to justify their surreptitious questioning of defendant about the same crime despite counsel’s instruction. Whether other circumstances might permit such questioning is not before us.
Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress the tape-recorded statements granted, and a new trial ordered.

. To be distinguished is a situation, as in People v Davis (75 NY2d 517), where a suspect not in custody requests a lawyer but then does not obtain one. There, the right does not attach both because coercive power is absent and because there is no lawyer-client relationship to impair.

. The dissent’s statement that Marrero was not decided on Hobson grounds (dissenting opn, at 389-390) is puzzling, as that case directly follows from Hobson principles (see, People v Marrero, 51 NY2d, at 58-59). The Court refused to decide whether representation ceased because under Hobson it did not matter: the "important factor * * * was the police awareness of an attorney’s appearance on the defendant’s behalf, rather than the precise terms of the retainer or appointment” (Marrero, 51 NY2d, at 59). The reference to Cunningham in Marrero merely points out that either requesting or retaining counsel is tantamount to a manifestation of defendant’s view that he is not competent to deal with the authorities without legal advice that, once expressed, must be respected unless properly waived. (Id.)

. In this case, neither the interest protected nor the burden imposed bears any resemblance to Bartolomeo (dissenting opn, at 391). Here, the police knew of counsel’s representation and instruction yet arranged for covert questioning of defendant about the very same charge. Prohibiting such questioning protects the right to counsel which was known to have indelibly attached. Bartolomeo, by contrast, required police investigation to determine whether defendant had a right to counsel at all, stemming from unrelated representation of which they might not even be aware. There should be no doubt whatever that the Bartolomeo cases and their underlying rationale are no longer part of our law (see, People v Bing, 76 NY2d, at 350).