THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHIAL E. FOSTER, Appellant. [900 NYS2d 219]—

Appeal from a judgment of the Jefferson County Court (Kim H. Martusewicz, J.), rendered November 5, 2008. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ordered that the judgment so appealed from is reversed on the law, that part of the motion seeking to suppress statements made by defendant to a confidential informant after July 17, 1997 is granted and a new trial is granted.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [2]), defendant contends that County Court erred in refusing to suppress certain statements he made to a confidential informant (CI) in connection with the murder of his girlfriend. The People stipulate that the CI was acting as an agent of the police when defendant made the statements. We agree with defendant that suppression is required with respect to certain statements, and we thus reverse the judgment.

According to the evidence presented at the suppression hearing, defendant's girlfriend was reported missing on May 30, 1996, and the last time that she was seen was on May 29, 1996, entering defendant's van. Despite the efforts of the police to locate the victim, her remains were not found for more than 11 years after her disappearance, when a passerby discovered them in a wooded area. Defendant was thereafter indicted for the murder.

Defendant contends that his indelible right to counsel attached when he agreed to speak to the police about the victim's disappearance and was accompanied to two interviews by an attorney who represented him in Family Court on pending paternity and custody proceedings in connection with the victim's two children. Defendant admitted during the second of those interviews that he possessed a sawed-off shotgun, and he was thereafter charged with criminal possession of a weapon and convicted of that offense. While incarcerated on that conviction, the police arranged for the CI in question to be housed in defendant's cell in order to obtain information concerning the victim's disappearance and probable murder.

Contrary to the contention of defendant, the suppression court properly determined that his indelible right to counsel had not attached with respect to the statements that he made to the CI prior to July 17, 1997 inasmuch as, until that date, he did not invoke his right to counsel to the police who interviewed him while he was incarcerated. The indelible right to counsel attaches in two situations: "upon the commencement of formal proceedings, whether or not the defendant has actually retained or requested a lawyer . . . [, and] where an uncharged individual has actually retained a lawyer in the matter at issue or, while in custody, has requested a lawyer in that matter" (*People v West*, 81 NY2d 370, 373-374 [1993]). Here, the record establishes that the attorney representing defendant in the Family Court matters accompanied him to the two interviews with the police in order to ensure that he did not say anything that would have a negative effect in the Family Court proceed-

ings, and we conclude that she was not retained "in the matter at issue" (*id.*). With respect to the contention of defendant that his right to counsel had indelibly attached based upon the representation of his attorney on the weapons possession charge, we conclude that the statements made to the CI prior to July 17, 1997 were made after that attorney-client relationship had terminated (*see id.* at 377; *see generally People v Robles*, 72 NY2d 689, 698 [1988]). We therefore conclude that defendant failed to establish that he was represented by that attorney either in the missing person matter or the weapons possession charge at the time he made statements to the CI (*see generally People v Rosa*, 65 NY2d 380, 387 [1985]).

We agree with defendant, however, that his indelible right to counsel attached on July 17, 1997, when defendant told the police who spoke with him at the correctional facility that he would not talk to them without an attorney present. The suppression court properly determined that the mere fact that defendant was incarcerated does not render the questioning custodial (*see People v Carrasquillo*, 50 AD3d 1547 [2008], *lv denied* 11 NY3d 735 [2008]). Nevertheless, we conclude in this case that the People failed to meet their burden of establishing that defendant knowingly and voluntarily waived his right to counsel when he divulged the details of the murder and disposal of the body to the CI several days after he had invoked his right to counsel (*see People v Davis*, 75 NY2d 517, 523 [1990]), particularly in view of the fact that, in determining whether the People met that burden, "the courts must indulge every reasonable presumption against waiver" (*id.*).

With respect to defendant's conversations with the CI, who as the People have conceded was acting as an agent of the police, "the full panoply of constitutional provisions and curative measures applies" (*People v Esposito*, 37 NY2d 156, 160 [1975]). After defendant had invoked his right to counsel, the police directed the CI to advise him that he would no longer assist him with the plan that defendant had devised to convince the police that the victim was still alive, unless defendant "came clean" with the CI with respect to how he had killed the victim. Defendant then described the murder, admitted that the victim's daughter was present, and described how he allegedly disposed of the body. The police did not believe defendant's story with respect to the disposal of the body, however, and they further directed the CI to tell defendant that the story was not credible. At that time, defendant provided the CI with what the police believed to be the true version of events, i.e., that defendant disposed of the body in a wooded, marshy area that in fact

matched the description of the area in which the victim's remains were eventually discovered. We conclude based on the record of the suppression hearing that defendant's conduct was not "so unambiguous that a hearing court would be warranted in inferring from the circumstances that the earlier request for counsel had been withdrawn" (*Davis*, 75 NY2d at 523). Defendant did not initiate further contact with the police after he invoked his right to counsel and, by virtue of the fact that he was incarcerated, we conclude that the suppression court erred in determining that the failure of defendant to retain counsel for the nearly two weeks during which he made incriminating statements to the CI evinced his intent to withdraw his request for counsel (*see generally id.*). Because defendant's statements to the CI concerning the murder of the victim and the disposal of the body corroborate the eyewitness testimony of the victim's daughter and, because the statements concerning the cause of death are corroborated by evidence that was found at the site where the body was discovered, we conclude that there is a "reasonable possibility that the error [in refusing to suppress those statements] might have contributed to defendant's conviction" and that the error thus was not harmless beyond a reasonable doubt (*People v Crimmins*, 36 NY2d 230, 237 [1975]).

We have reviewed defendant's remaining contentions and conclude that they are without merit.

All concur except Gorski, J., who dissents in part in accordance with the following memorandum.

Gorski, J. (dissenting in part). I must respectfully dissent in part. Although I agree with the ultimate conclusion of the majority that reversal is required in this case, I conclude, unlike my colleagues, that defendant's indelible right to counsel attached prior to July 17, 1997. On May 31, 1996, defendant agreed to meet with the police at 10:00 A.M. for an interview in connection with the disappearance of his girlfriend. At approximately 9:30 A.M. that day, the investigating officer received a telephone call from the office of the Public Defender informing him that a specified attorney would accompany defendant when he met with the police that day, and that they would arrive at 11:00 A.M. Defendant and the attorney in fact arrived at the police station for the interview shortly after the designated time. In my view, the act of defendant in contacting the office of the Public Defender, the act of personnel from that office in rescheduling the interview so that an attorney for defendant could be present, and the act of the attorney from that office in accompanying defendant to the interview "adequately apprised the police that [defendant] had retained an attorney with re-

spect to the matter under investigation and that he wished his attorney to be present during questioning" (*People v Ellis*, 58 NY2d 748, 750 [1982]). Although defendant allegedly told the investigating officer that the attorney "was there so [defendant] didn't say anything to hurt his Family Court case," I cannot agree with the majority that defendant's alleged statement is sufficient to establish that the attorney had not been retained "in the matter at issue" prior to July 17, 1997 (*People v West*, 81 NY2d 370, 373-374 [1993]). Indeed, inasmuch as the Family Court proceedings in question involved the two children of defendant and his then-missing girlfriend, it is difficult to conceive how the matters could be construed as unrelated. I note in addition that the attorney also accompanied defendant to a subsequent polygraph examination conducted in connection with the girlfriend's disappearance. I therefore conclude that the suppression court erred in refusing to suppress the statements made by defendant to the confidential informant (CI) prior to July 17, 1997 and would grant that part of defendant's omnibus motion seeking to suppress those statements as well as those made to the CI after that date. Present—Scudder, P.J., Fahey, Carni and Gorski, JJ.