(June 16, 2011)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD A. DASHNAW, Appellant. [925 NYS2d 262]—

Rose, J. Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered June 14, 2007, upon a verdict convicting defendant of the crimes of murder in the first degree (two counts), grand larceny in the fourth degree (two counts), criminal possession of stolen property in the fifth degree (three counts) and criminal possession of a forged instrument in the second degree (two counts).

The victims in this case, David Donivan and Lorraine Donivan, operated a furniture business known as the House of Pine from their home in the Town of Schuyler Falls, Clinton County. On December 29, 2005, David's body was found hidden in the basement of their home. Two days later, Lorraine's body was located concealed in the loft of the furniture showroom. Although the exact time of death could not be determined, evidence indicated that the couple had been stabbed to death sometime on or about December 20, 2005. An extensive investigation resulted in an 11-count indictment against defendant. Following a lengthy trial, the jury convicted defendant of two counts of murder in the first degree, two counts of grand larceny in the fourth degree, three counts of criminal possession of stolen property in the fifth degree and two counts of criminal possession of a forged instrument in the second degree. Defend-

ant was sentenced to two concurrent prison terms of life without parole on the murder convictions, as well as lesser sentences on the remaining charges.

During the course of the investigation, defendant was questioned three times by the police. The first interrogation took place on December 29, 2005 after defendant agreed to accompany the investigators to the State Police barracks in the City of Plattsburgh, Clinton County. It was established at the *Huntley* hearing that defendant was not in custody when the police interview began at around 1:30 P.M. However, at approximately 3:30 P.M., after the discovery of David's body, defendant was given *Miranda* warnings and, as County Court correctly determined, it was at this point that defendant was in custody. Because the hearing testimony established that defendant then invoked his right to remain silent and requested counsel, the court properly admitted those statements made by defendant prior to 3:30 P.M., but excluded any statements made as a result of the subsequent custodial interrogation from that point until he was released from custody at about 3:30 A.M. on December 30, 2005.

The second interrogation began approximately 11 hours later, at 2:30 P.M. on December 30, 2005, when police investigators intercepted defendant on the interstate after being informed that he was on his way to speak to them. According to the testimony of various investigators, defendant then voluntarily accompanied them to the State Police barracks in the Village of Keeseville, Clinton County, where an 8$^{1}/_{2}$-hour interrogation ensued. Finding that defendant was no longer in custody and that, in any event, he voluntarily waived any previously invoked right to counsel, County Court denied suppression of those statements made by defendant. Thereafter, defendant was arrested on January 12, 2006 and, after waiving his *Miranda* rights, made incriminating statements that the court deemed admissible.

Defendant asserts that County Court erred in not suppressing his statements made on the afternoon of December 30, 2005 and on January 12, 2006 as the product of unlawful police interrogation. We agree. As is relevant to this appeal, the right to counsel indelibly attaches "when an uncharged individual 'has actually retained a lawyer in the matter at issue or, *while in custody*, has requested a lawyer in that matter' " (*People v Ramos*, 99 NY2d 27, 32-33 [2002] [emphasis added], quoting *People v West*, 81 NY2d 370, 373-374 [1993]). The right is referred to as indelible because, once it attaches, it cannot be waived outside the presence of counsel (*see People v Jones*, 2

NY3d 235, 242 [2004]; *People v Grice*, 100 NY2d 318, 320-321 [2003]). Here, the record is clear that the right to counsel in this matter indelibly attached on December 29, 2005 when defendant, while in custody, requested counsel. Any further questioning on that matter was precluded whether or not defendant was in custody at the time of questioning. Notwithstanding the People's contention that the encounter on December 30, 2005 was voluntary, defendant could not waive that indelible right without counsel present (*see People v Jones*, 2 NY3d at 242; *People v Grice*, 100 NY2d at 320-321; *People v Payne*, 233 AD2d 787, 788 [1996]). Furthermore, with regard to the January 12, 2006 statements, again, defendant could not voluntarily waive his *Miranda* rights outside the presence of counsel. Nor did the passage of two weeks from the initial invocation of his *Miranda* rights negate the indelible right to counsel on the matter at issue (*see e.g. People v West*, 81 NY2d at 379-380).

A violation of the indelible right to counsel, however, must be reviewed under the harmless error doctrine before reversal is required (*see People v Lopez*, 16 NY3d 375, 386 [2011]; *People v West*, 81 NY2d at 373). "Errors of this type are considered harmless when, in light of the totality of the evidence, there is no reasonable possibility that the error affected the jury's verdict" (*People v Lopez*, 16 NY3d at 386 [internal quotation marks and citation omitted]). Prior to defendant being in custody on December 29, 2005, he stated to police investigators that he went to the House of Pine on December 20, 2005 to look for a gift for his girlfriend and, while there, inquired about employment because he had previously worked for the Donivans. According to defendant, Lorraine agreed to hire him to shovel snow as needed and make furniture deliveries. Defendant stated that Lorraine then provided him with two checks as prepayment—which he cashed—and indicated that she and David were going on vacation soon. Defendant further claimed that when he returned to the House of Pine on December 24, 2005 to make a furniture delivery, the Donivans were not home but a note regarding a furniture delivery was left on the door. He and Corey Desso, Lorraine's nephew and an employee who delivered furniture for the House of Pine, made the furniture delivery, but when they returned, the Donivans still were not home. Defendant claimed that he did not return to the House of Pine until December 29, 2005, when Desso informed him that he had received a note about another furniture delivery, as well as the Donivans' credit card for fuel. Desso picked defendant up, and they then encountered the police when they arrived at the House of Pine.

In contrast, on December 30, 2005 and January 12, 2006,

when defendant made the incriminating statements at issue here, he offered differing and inconsistent versions of the events surrounding his last contact with the Donivans, the checks he cashed, and the use of the Donivans' credit card as well as their vehicle. During the trial, extensive testimony was elicited regarding these improperly obtained incriminating statements and admissions. Furthermore, the People relied on these inconsistencies and admissions during their closing statement to bolster the proffered evidence of defendant's guilt.

Compounding these errors was the impermissible introduction of testimony during the People's case-in-chief regarding defendant's invocation of both his right to remain silent and his right to counsel (*see People v De George*, 73 NY2d 614, 618 [1989]; *People v Von Werne*, 41 NY2d 584, 588 [1977]; *People v Hunt*, 18 AD3d 891, 892 [2005]). Specifically, Senior Investigator Robert Lawyer testified that when defendant was presented with the pivotal question of whether he was present when the Donivans were killed, defendant did not answer, put his head down and then asked for an attorney. Although this testimony was not objected to at trial, it clearly was elicited to establish defendant's consciousness of guilt and, in the absence of any curative instructions, "we cannot ignore the potential for prejudice" (*People v Murphy*, 51 AD3d 1057, 1058 [2008], *lv denied* 11 NY3d 792 [2008]; *see People v Knowles*, 42 AD3d 662, 665 [2007]).

We are well aware of the evidence of defendant's guilt submitted throughout the course of the People's case-in-chief, including the DNA evidence of defendant's blood at the crime scene, his possession of, among other things, the Donivans' personal property, as well as testimony regarding the similarities in defendant's handwriting and the handwriting on the checks and notes allegedly penned by the Donivans. To be sure, the conviction was not against the weight of the evidence. The People, however, utilized defendant's multiple incriminating statements as well as the invocation of his *Miranda* rights to bolster that evidence. Notwithstanding the quantum and nature of the proof, under all the circumstances here, we are constrained to find that a reasonable possibility exists that these numerous and repeated constitutional errors "might have contributed to the conviction" (*People v Hardy*, 4 NY3d 192, 198 [2005] [internal quotation marks and citations omitted]; *see People v Murphy*, 51 AD3d at 1058; *People v Knowles*, 42 AD3d at 665). Accordingly, the judgment must be reversed and the matter remitted for a new trial.

Inasmuch as defendant's challenges to the search warrant,

the exclusion of a potential witness from the courtroom during jury selection, the denial of his motion to submit an untimely notice of alibi and the admission of DNA testimony are likely to arise again on a retrial, we have considered them and found them to be without merit. The remaining evidentiary issues, all raised in the pro se supplemental brief, are not preserved for our review.

Mercure, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and matter remitted to the County Court of Clinton County for a new trial.