==================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------
No. 154
The People &c.,
          Respondent,
        v.
Samuel McLean,
          Appellant.


          Danielle Neroni Reilly, for appellant.
          Gerald A. Dwyer, for respondent.


SMITH, J.:

          We hold that when police are told by a suspect's lawyer
that the lawyer no longer represents him, they may question the
suspect without violating his right to counsel.

                              **I**

          In 2003, defendant was being prosecuted for robbery.

                            - 1 -

He was represented by Stephen Kouray, a part-time deputy public defender.  Defendant told Kouray that he had information about an unrelated crime, the murder of a young man named Leonder Goodwin, and asked Kouray to see if that information could be used to get him a more lenient sentence in the robbery case.  Kouray approached the district attorney's office and negotiated a plea bargain, under which defendant pleaded guilty to robbery.  His sentence was capped at 12 years, with the understanding that he could get less time if he provided helpful information about the Goodwin murder.

After entering his plea, defendant met with Detective John Sims in Kouray's presence in October of 2003.  Defendant told Sims, in substance, that on the night of the murder he had been walking to his niece's house when he saw two men he recognized, Antoan Baker and "Kendu," shoot a "kid."  He said that he met Baker and Kendu shortly after the shooting, discussed the incident, and discovered that Kendu was carrying "a gun that used to be mine."  Defendant said he later retrieved the gun and threw it away in a sewer.  Defendant identified Baker and Kendu from photo arrays and led the police to the sewer where he said he had dropped the gun, but the gun was not recovered.

Sims evidently found defendant's story unconvincing.  An assistant district attorney reported to County Court that defendant's information "was not truthful information," and defendant received a 12-year sentence for the robbery.

In 2006, having been told by Antoan Baker that defendant himself took part in the Goodwin murder, Sims decided that he would like to speak to defendant again. The district attorney instructed Sims that he must first "check with Mr. Kouray to see whether he continued to represent him or what the nature of his representation was." Sims and Detective Michael Brown then visited Kouray at his office and asked whether Kouray was still representing defendant. Kouray, according to Sims, answered "No, I'm not," adding: "I represented Mr. McLean in the robbery . . . . you can go talk to him if you want to." Kouray acknowledged that Sims or Brown had asked him whether he still represented defendant. Kouray's recollection of his response was: "He's been sentenced. The robbery case is over."

After speaking to Kouray, Sims and Brown went to see defendant in prison. No lawyer was present. Sims and Brown gave defendant Miranda warnings, but did not ask if Kouray still represented him, and defendant volunteered nothing on that subject. Told that Baker was implicating him in the Goodwin homicide, defendant gave a new version of events: He said that he was in a car with Baker, Kendu and a fourth man, intending to commit a robbery. Defendant said that Kendu borrowed defendant's gun, and that Baker and Kendu got out of the car and opened fire on a group of "kids," one of whom fell.

Defendant was indicted for murder and other crimes in connection with Goodwin's death. After unsuccessfully moving to

suppress his 2006 statement to Sims and Brown, he pleaded guilty. He argued on direct appeal that the taking of that statement violated his right to counsel, but both the Appellate Division (People v McLean, 59 AD3d 861 [3d Dept 2009]) and this Court (15 NY3d 117 [2010]) found the record insufficient to permit review of the claim.

Defendant then moved in County Court to set aside his conviction pursuant to CPL 440.10, again arguing that the 2006 interview violated his right to counsel. County Court held an evidentiary hearing, at which Sims and Kouray described their 2006 conversation in the language quoted above. The court, apparently regarding the two versions as consistent, gave "full credence" to both. It denied the motion, and the Appellate Division, with one Justice dissenting, affirmed (People v McLean, 109 AD3d 670 [2013]). The dissenting Justice granted defendant leave to appeal to this Court, and we now affirm.

## II

Defendant claims that Sims's and Brown's questioning of him in 2006 violated the rule that, once an attorney has entered a proceeding, the defendant cannot be questioned in the absence of counsel, unless he affirmatively waives his right to counsel in the attorney's presence (People v Arthur, 22 NY2d 325, 329 [1968]; People v West, 81 NY2d 370, 373-374 [1993]). The People respond with three arguments, made in the alternative: They say that Kouray never entered the homicide case as defendant's

lawyer; that if he did, he did so only for a limited purpose (negotiating a disposition of the robbery case) and that the representation terminated when that purpose was accomplished; and that, in any event, the police reasonably concluded, after talking to Kouray, that he was no longer defendant's lawyer. We are persuaded by the third of these arguments, and need not consider the first two.

West is the most relevant precedent. There, the defendant had been represented by counsel in a 1982 lineup, which did not result in any charge against him. In 1985 and 1986, the police, having "made no attempt to determine whether defendant was still represented by his lawyer," arranged for an informant to speak to the defendant and to tape record the conversations (81 NY2d at 372). We held that the police officers' failure to make inquiry required suppression of the defendant's statements, regardless of what the inquiry would have shown:

> "Should the police have desired to question after defendant's right had attached, it was their burden to determine whether the attorney-client relationship had terminated"

(id. at 380).

The rule of West places a significant burden on the police, but we made clear that the burden is not impossible to sustain. We rejected the suggestion, made by Judge Simons in dissent, that under our holding "the right to counsel is interminable" (id.). It would be a different case, we explained, if the police, when they arranged for the tape recordings, "had

any reason to believe that a known attorney-client relationship in the matter had ceased" (id. at 381).

Here, the police did have a reason -- an excellent one -- to believe that the attorney-client relationship had ceased: the attorney had told them so.  By asking the question and getting an unequivocal answer, the police discharged their burden.  It is no doubt true that they could have done more.  They could have explained to Kouray exactly why they were eager to talk to defendant, or they could have asked defendant himself whether the relationship had reached an end.  Perhaps had they done so, they would have received a different answer.  But the police are not required to take all imaginable steps to protect a defendant's right to counsel.  Where they follow the rules laid down in our cases -- rules that are, in general, highly protective of the attorney-client relationship -- they need do no more (see People v Booker, 53 AD3d 697, 699 [3d Dept 2008] [holding that the police were entitled to rely on an attorney's assurance that the defendant had decided, after consultation with the attorney, to waive his right to counsel]).

Accordingly, the order of the Appellate Division should be affirmed.

People v McLean (Samuel)

No. 154

LIPPMAN, Chief Judge (dissenting):

When this case was previously before us, the majority found it necessary to remit for a CPL 440.10 hearing, while I joined Judge Jones's dissent, opining that defendant had been represented by counsel in the murder case and that his later, uncounseled statements had been obtained in violation of his right to counsel (15 NY3d 117, 125 [2010]).

The more specific issue presented here, as limited by the majority opinion, is whether, given the uncertainty as to defendant's representational status, the police reasonably concluded that they could question defendant about the murder. It is well settled that where, as here, an ambiguity exists as to whether a defendant is represented by counsel with respect to a particular matter, the burden is on the police to ascertain whether that representation has terminated before questioning the defendant on that matter outside the presence of counsel (see People v West, 81 NY2d 370, 376 [1993]). The police inquiry here fell short of what was necessary to honor defendant's cherished right to counsel.

In 2003, defendant was represented by Steven Kouray in

- 1 -

connection with a robbery charge.  Seeking a reduced sentence on
the robbery, defendant offered to provide information on the
unsolved 2002 murder of Leonder Goodwin.  Kouray contacted the
District Attorney's Office on defendant's behalf and accompanied
him to meet with homicide investigators Sims and Brown.
Defendant was given his <u>Miranda</u> warnings before speaking with the
officers.  During the interview, Kouray periodically conferred
with defendant and advised him not to answer certain questions.
They also went over the written statement together before
defendant signed it.  In addition, Kouray accompanied defendant
the following day when he identified two individuals from a photo
array and on his ride-along with the police to show them where
the murder weapon had been discarded.  At the time, Kouray
apparently believed that defendant was only an eyewitness to the
murder.  Defendant's information was not deemed credible and he
was therefore afforded no leniency when he was sentenced on the
robbery charge in June 2004.

In December 2006, the police considered defendant a
suspect in the Goodwin murder and wanted to interview him again.
On instructions from the District Attorney, Investigator Sims
went to see Kouray before questioning the defendant and inquired
whether Kouray still represented him.  According to Sims, he
mentioned the "Goodwin case," but did not say anything about a
murder.  Kouray responded that he no longer represented defendant
and made reference to the robbery case having been concluded.

Sims then went to speak with defendant at Green Meadow Correctional Facility; he did not ask defendant whether he was represented by counsel.  Defendant waived his <u>Miranda</u> rights and gave a statement incriminating himself in the Goodwin murder.

"New York has long viewed the right to counsel as a cherished and valuable protection that must be guarded with the utmost vigilance . . . [T]he right to counsel is referred to as 'indelible' because, once it 'attaches,' interrogation is prohibited unless the right is waived in the presence of counsel" (<u>People v Lopez</u>, 16 NY3d 375, 380 [2011] [citations omitted]). The rule precluding officers from questioning a represented defendant derives from the theory that, by obtaining counsel with regard to "a particular matter, defendant [has] manifested his belief that he was unable to deal with the coercive power of the authorities without legal assistance" (<u>West</u>, 81 NY2d at 375).

"Once an attorney has appeared on the defendant's behalf we have refused to allow the police to rely on arguable ambiguities in the attorney-client relationship in order to justify police questioning of the defendant without the attorney being present.  We have indicated that if the police are uncertain as to the scope of the attorney's representation, the defendant should not be questioned" (<u>People v Marrero</u>, 51 NY2d 56, 59 [1980] [citations omitted]).  Where it is likely that defendant is represented by counsel, the police have the obligation to make a reasonable inquiry into the status of that

representation (see e.g. Lopez, 16 NY3d at 383).

Here, the limited inquiry made of Kouray did nothing to dispel the ambiguity as to whether defendant was represented by counsel on the homicide. Although the investigator inquired whether Kouray continued to represent defendant, the question was not asked in a way that was designed to elicit an informed response. It was three years earlier when Kouray had appeared with defendant in the context of the homicide investigation. The investigator's reference to the murder victim's name, without more, was unlikely to bring to mind Kouray's involvement in a remote matter in which he believed his client was only tangentially involved. Indeed, despite Kouray's response that his representation on the robbery had concluded, which should have alerted the officers to the continuing ambiguity with respect to any representation on the homicide, they made no further attempt to clarify the situation. At a minimum, this half-hearted effort to ascertain defendant's representational status falls well short of scrupulously honoring his right to counsel.

The majority recognizes that the officers likely would have received a different answer if they chose to pursue the issue further, but still finds that this perfunctory inquiry was adequate to satisfy their responsibility (see majority op at 6). This undemanding standard is insufficiently protective of defendant's right to counsel.

Moreover, the investigator could have dispelled any remaining ambiguity by asking defendant himself whether he was represented by counsel (see People v Lucarano, 61 NY2d 138, 147 [1984]).  As we have previously held, once a defendant denies that he is represented, the officers need inquire no further (see Lucarano, 61 NY2d at 148).  This does not place any great burden on the police and will, in most cases, result in a clear answer as to defendant's representational status.  "The value of this protection to the individual far exceeds the inconvenience caused by requiring that the police make a simple inquiry of defendant" (Lucarano, 61 NY2d at 147).  This is the bare-bones minimum that should be expected of the police.

For the reasons previously stated, I would find that the police could not rely on Kouray's statement to reach the conclusion that he was no longer defendant's lawyer and would grant his CPL 440.10 motion.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Smith.  Judges Graffeo, Read, Pigott and Abdus-Salaam concur.  Chief Judge Lippman dissents in an opinion in which Judge Rivera concurs.

Decided October 21, 2014