[998 NYS2d 286]

The People of the State of New York, Plaintiff, v Bernard C. Ledbetter, Defendant.

City Court of Middletown, December 15, 2014

## APPEARANCES OF COUNSEL

*Karen Sferlazzo* for defendant.

*David M. Hoovler, District Attorney* (*Christopher S. Clark* of counsel), for plaintiff.

## OPINION OF THE COURT

STEVEN W. BROCKETT, J.

The defendant moves to suppress statements made to an investigator from Child Protective Services, claiming that questioning by the investigator violated his right to counsel and was conducted without required *Miranda* warnings. A suppression hearing was held and the following facts are drawn from the credible testimony at the hearing, a review of the court's file and the submissions of counsel.

## Facts

On April 15, 2014, police officers responded to the report of a domestic incident on North Street in Middletown. Following a brief investigation, the defendant was arrested and charged with attempted assault, second degree, and endangering the welfare of a child for allegedly striking his two-year-old daughter several times with a belt, causing substantial pain, welts

and swelling to her back and buttocks. The defendant was additionally charged with criminal mischief, fourth degree, for allegedly breaking a window and damaging a door during the incident. The arrest was based on allegations made by the child's mother and on observations by the police officers. The defendant was neither Mirandized nor questioned by the police. He was arraigned that day, remanded to the county jail in lieu of bail and the Public Defender's office was assigned to represent him. The police transmitted a report regarding the incident to the State's Family Protection Registry and a Child Protective Services (CPS) investigator was assigned to the case. The investigator, Valerie Kurlander, testified at the suppression hearing regarding her involvement in the matter.

Ms. Kurlander testified that upon receiving the report of possible child abuse, she was required to conduct an immediate safety assessment and to follow up with interviews of all involved parties within seven days. She spoke to the police late in the afternoon of April 15, and then went to the North Street residence and spoke to the mother of the two year old regarding the incident that had occurred earlier that day. On April 21, Ms. Kurlander responded to a subpoena issued by the District Attorney's office directing her to appear before the grand jury. Upon her arrival, she was advised by an Assistant District Attorney that the mother of the two year old had recanted her previous allegations regarding the incident, and that the case would not be presented to the grand jury as scheduled. Ms. Kurlander, who had been advised by the police that the defendant was at the jail, told the Assistant that she would meet with the defendant there the following day and that her office would advise the District Attorney's office of the outcome of the interview.

On April 22, Ms. Kurlander went to the county jail to speak to the defendant. By that time, the Legal Aid Society had entered the case on behalf of the defendant and an attorney had previously appeared with him in City Court. Upon meeting the defendant in an interview room, Ms. Kurlander advised him that he was a respondent in a CPS investigation and that she was looking for his perspective on the incident with his daughter. The defendant told the investigator that he had nothing to say to her. He further declined to accept her offered business card. Ms. Kurlander advised the defendant that he had the right not to speak to her. She then asked him if he wanted to know the narrative of the report she had received.

The defendant replied, "Yes." Ms. Kurlander then read from the report made by the police to the Family Protection Registry. The report stated that a domestic violence incident had occurred in the defendant's home, that a child was present during the incident and that the child received marks on her body caused by the defendant. In response to hearing this narrative, the defendant stated, "I beat her. That's my child." When Ms. Kurlander asked if he had beat her with a belt, the defendant responded, "Yes." When asked if he was aware that there was an order of protection issued against him, the defendant acknowledged the order and stated, "There's ways around it."

Ms. Kurlander testified that she had not advised the defendant regarding his right to counsel and had not read him *Miranda* warnings. Following the jailhouse interview and pursuant to directions from her supervisor, Ms. Kurlander advised the District Attorney's office of the statements made by the defendant. The defendant now moves to suppress those statements.

### Decision

The defendant argues that the questioning by the CPS investigator violated his right to counsel as provided by the State Constitution and his right against self-incrimination as provided by the Federal Constitution.

### A.

A defendant's right to counsel under the New York State Constitution is "indelible." (*People v Lopez*, 16 NY3d 375, 380 [2011]; *People v West*, 81 NY2d 370 [1993].) Once triggered, the right cannot be waived, except in the presence of the defendant's attorney. (*Id.*; *People v Settles*, 46 NY2d 154, 165-166 [1978].) The right to counsel attaches at the commencement of formal criminal proceedings (*see West* at 373), and the defendant having been arraigned on criminal charges and subsequently appearing in court with an attorney, it is clear that his right had attached at the time of his questioning by the CPS investigator (*see People v Wilhelm*, 34 AD3d 40, 43-45 [3d Dept 2006]; *People v Greene*, 306 AD2d 639, 640 [3d Dept 2003]; *cf. People v Jackson*, 4 AD3d 848, 849 [4th Dept 2004], *habeas corpus granted* 763 F3d 115 [2d Cir 2014] [filing of a child abuse petition, in and of itself, does not trigger right to counsel]). Any statements obtained in violation of a defendant's right to counsel must be suppressed. (*People v Velasquez*, 68

NY2d 533, 537 [1986]; *Wilhelm* at 45; *see also People v Townes*, 41 NY2d 97, 102-103 [1976] ["It has long been the law in this State that any incriminating statement made in the absence of counsel by a defendant in response to interrogation relating to the criminal charge under investigation after he has been arraigned or indicted is inadmissible in evidence against the defendant"].) While usually arising in the context of police officer interrogation, a defendant's right-to-counsel protections also apply to statements obtained through questioning by private individuals "acting under [the] direction or in cooperation with" law enforcement personnel. (CPL 60.45 [2] [b]; *Wilhelm* at 45-46; *Greene* at 640-641.)

The defendant moves to suppress statements made to the CPS investigator, Ms. Kurlander, arguing that they were taken in violation of his right to counsel. The People argue that Ms. Kurlander was not acting as an agent of law enforcement and that the defendant's right to counsel is not implicated in this case. Whether a CPS caseworker conducting a child abuse investigation is an agent of law enforcement officers conducting a parallel criminal investigation is a fact-sensitive determination. In cases where the interactions between the CPS investigator and law enforcement were minimal, courts have found no agency relationship. (*See People v Texidor*, 71 AD3d 1190 [3d Dept 2010]; *People v Whitmore*, 12 AD3d 845 [3d Dept 2004].) In cases where the actions of the CPS investigator were more intertwined with those of law enforcement, an agency relationship has been found. (*See People v Wilhelm*; *People v Greene*.)

█ I find that Ms. Kurlander's jailhouse interview was sufficiently intertwined with the District Attorney's potential grand jury presentation that she became an agent of the prosecution. The statements made by the defendant were, therefore, involuntary because they were the product of questioning by "a public servant engaged in law enforcement activity or by a person then acting . . . in cooperation with him." (CPL 60.45 [2] [b].)*

The CPS investigators in both *People v Wilhelm* (34 AD3d 40, 46-47 [2006]) and *People v Greene* (306 AD2d 639, 641 [2003]) were part of countywide teams, that included police officers, assigned to investigate allegations of child abuse. Ms.

---

* The People do not dispute that the CPS investigator elicited the admissions from the defendant. (*See generally People v Rogers*, 48 NY2d 167, 173 [1979].)

Kurlander was not a part of any such joint venture. The use of formal teams made up of police, CPS investigators and prosecutors was undoubtedly ended by decisions like *Wilhelm* and *Greene*—decisions that ordered the suppression of statements given to team members. The obvious alignment of interests between these parties, however, remains unchanged. Ms. Kurlander was subpoenaed by the District Attorney's office to testify in criminal proceedings against the defendant. She had not sought to interview the defendant at the time she responded to the subpoena. Ms. Kurlander spoke to an Assistant District Attorney and learned that the prosecution of the defendant had stalled because of the mother's recantation of allegations previously made against the defendant. Ms. Kurlander told the prosecutor that she would see the defendant the next day and advise his office of the results of the interview. The defendant's admissions were immediately reported to the District Attorney's office. The investigator's jailhouse interview with the defendant fulfilled her statutory obligation to investigate the reported child abuse; I find that she also went intending to aid the prosecution if she could.

The People argue that Ms. Kurlander's interview involved a separate civil investigation and is not subject to right-to-counsel rules. The subject of the investigation, however, was the exact incident that resulted in the defendant's arrest for attempted assault and endangering the welfare of a child. The Court of Appeals has held that a defendant's right to counsel is implicated where the subject of a civil investigation and separate criminal charges "are so inextricably interwoven . . . as to render unavoidable the conclusion that any interrogation concerning the [civil matter] would almost inevitably involve some potentially incriminating discussion . . . of the crime itself." (*People v Townes*, 41 NY2d 97, 104 [1976].) The interwoven nature of the investigations in the instant case along with Ms. Kurlander's involvement with the potential grand jury investigation, her discussion with the Assistant District Attorney and her prompt report of the results of her interview to the District Attorney's office all lead to the conclusions that she was acting as an agent of the prosecution and that the defendant is entitled to right-to-counsel protections. (*See People v Wilhelm*, 34 AD3d at 47.)

The CPS investigator's statutory mandate to interview the defendant does not dictate a different result.

> "The regulatory mandate that a CPS caseworker conduct face-to-face interviews with subjects of

child abuse reports (18 NYCRR 432.2 [b] [3] [ii] [a]) cannot overcome a subject's constitutional right if the CPS caseworker is an agent for the police at the time of the interview. That mandate can be complied with either by arranging an interview with the subject and counsel or merely completing the information gathering by the CPS caseworker without the ability to use the statement in any criminal proceeding." (*People v Greene*, 306 AD2d 639, 641 [2003], citing *People v Townes*, 41 NY2d 97, 104-105 [1976].)

Because the CPS investigator was an agent of law enforcement, her jailhouse interview of the defendant violated his right to counsel.

## B.

The defendant also argues that the statements to the CPS investigator are inadmissible because he was not provided with required *Miranda* warnings. The *Miranda* rule provides that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (*Miranda v Arizona*, 384 US 436, 444 [1966].) The protections provided under *Miranda* apply only to statements made during custodial interrogation. (*Id.* at 444-445.)

The defendant was in custody for *Miranda* purposes. The statements were made within a week of his arrest, while the defendant was being held in the county jail on the very charges that the statements concern. (*See Edwards v Arizona*, 451 US 477 [1981]; *cf. People v Alls*, 83 NY2d 94 [1993] [defendant serving a prison sentence in a state correctional facility is not "in custody" for the purposes of questioning on a completely unrelated matter]; *Maryland v Shatzer*, 559 US 98, 106 [2010] [distinguishing *Edwards v Arizona*, which is described as a case where "the suspect ha(d) been arrested for a particular crime and is held in uninterrupted pretrial custody while that crime is being actively investigated"].)

Likewise, it is clear that the investigator's jailhouse interview with the defendant constituted interrogation. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions . . . reasonably likely to elicit an incriminating response from the suspect."

(*Rhode Island v Innis*, 446 US 291, 301 [1980].) When Ms. Kurlander initially asked the defendant to discuss the allegations in the Family Protection Registry report, he stated that he had nothing to say to her. Her subsequent reading of the allegations was likely to prompt a response and I believe was intended to do so. (*See Jackson v Conway*, 763 F3d 115, 139-140 [2d Cir 2014].) Neither the police at the time of the arrest, nor Ms. Kurlander prior to the interview, had advised the defendant of his right to remain silent, his right to counsel during questioning and his right against self-incrimination. Under the circumstances presented, all the defendant's statements resulted from interrogation as defined under *Miranda*.

Indeed, the People do not argue that the defendant was not in custody or was not subjected to interrogation. Rather, the People argue that the CPS investigator was not an agent of law enforcement and was conducting a separate civil investigation.

In *People v Jackson* (4 AD3d 848, 849 [4th Dept 2004], *habeas corpus granted* 763 F3d 115 [2d Cir 2014]), the Appellate Division determined that a CPS caseworker was not engaged in law enforcement activity and was not required to advise the defendant of his *Miranda* rights prior to an interview that followed the defendant's arrest for child sex offenses. In a subsequent habeas corpus proceeding, the Second Circuit Court of Appeals affirmed the District Court's grant of habeas relief and vacated convictions that relied on statements made to the caseworker. (*Jackson v Conway*, 763 F3d 115 [2014].)

In *Jackson*, police brought the defendant to the police station for questioning regarding allegations that he had raped and sexually abused two women and his 14-year-old daughter. (763 F3d at 121-122.) When the defendant attempted to leave, he was formally arrested and read his *Miranda* rights. (*Id.* at 122.) Jackson invoked his right to remain silent and was placed in a holding cell for the next 8½ hours. (*Id.*) The police informed the Department of Social Services of the allegations relating to the child and a CPS caseworker was assigned to investigate the case. (*Id.*) That caseworker and police officers jointly interviewed the victims at the police station. (*Id.*) The caseworker then asked to interview the defendant, and he was brought from the holding cell to a hallway in the police station where he spoke privately with her. (*Id.*) The caseworker identified herself and explained her role in the investigation of the abuse allegations involving the defendant's daughter. (*Id.*) She

did not advise the defendant of his rights or give him any warning regarding the possible use of any statements he made. (*Id.*) The defendant agreed to speak to the caseworker and made admissions that were used against him at trial. (*Id.*)

In Jackson's subsequent habeas corpus proceeding, the Second Circuit was called upon to decide "whether the admission at Jackson's criminal trial of his statements to [the caseworker] violated his Fifth Amendment right to be free from compulsory self-incrimination." (*Id.* at 135 n 21.) The Circuit Court reviewed *Mathis v United States* (391 US 1 [1968]) and *Estelle v Smith* (451 US 454 [1981]), two Supreme Court rulings on Fifth Amendment protections in the context of questioning by state actors who were not police officers. (*Id.* at 137-138.) The Circuit Court found that the caseworker was aware that her CPS investigation could contribute to a criminal prosecution of Jackson (*id.* at 139), and held that the Appellate Division's conclusion that the caseworker was not engaged in law enforcement activity "was an objectively unreasonable application" of clear Supreme Court precedent (*id.* at 138). The court concluded that "[b]ecause Jackson was not informed prior to [the caseworker's] interrogation that his statements to her could be introduced at his criminal trial, the State should not have been permitted to rely on those statements to secure Jackson's conviction." (*Id.* at 139-140.)

■ In the present case, it appears that Kurlander's CPS investigation falls squarely under the Second Circuit's decision in *Jackson*. Kurlander was aware that there was an active criminal prosecution of the defendant, and I have found that she intended to, if possible, aid the District Attorney's investigation. And unlike *Jackson*, the defendant in the present case had never been advised of his rights under *Miranda* prior to questioning and he had initially refused to speak to the investigator. The *Jackson* decision appears to mandate a finding that the defendant's right against self-incrimination was violated.

The People argue that *Jackson* is not binding on this court. While it is clear that the New York State Court of Appeals is not bound by a Circuit Court interpretation of a federal constitutional question (*People v Kin Kan*, 78 NY2d 54, 59-60 [1991]), it is not clear that I have the authority to decide this matter contrary to the decision in *Jackson*. And I find *Jackson* to be, at least, persuasive authority. (*See id.*; *Moulton v State of New York*, 114 AD3d 115 [3d Dept 2013].)

Additionally, Ms. Kurlander was a state employee assigned to investigate the matter by a state agency pursuant to state regulations. (*Cf. People v Ray*, 65 NY2d 282, 286 [1985] [private store detective's questioning of a shoplifter prior to any government involvement did not require *Miranda* warnings].) In *Ray*, all police involvement in the case, including the arrest of the defendant, occurred after inculpatory statements had been made to a private store detective. (*Id.*) In the present case, police had arrested the defendant and he was actively being prosecuted in court prior to Ms. Kurlander's jailhouse interview. The CPS investigator's interview in this case constituted the type of state action that requires that the defendant be advised of his rights pursuant to *Miranda*.

The failure to provide *Miranda* warnings prior to the interview with the defendant violated his right against self-incrimination.

## Conclusion

The defendant's motion to suppress statements made to the CPS investigator is granted. The People may, however, use these statements to challenge the credibility of the defendant should he choose to testify at trial. (*See People v Wise*, 46 NY2d 321, 328-329 [1978]; *Greene*, 306 AD2d at 641-642.)