OPINION OF THE COURT
Smith, J.
We hold that when police are told by a suspect’s lawyer that the lawyer no longer represents him, they may question the suspect without violating his right to counsel.
I
In 2003, defendant was being prosecuted for robbery. He was represented by Steven Kouray, a part-time deputy public defender. Defendant told Kouray that he had information about an unrelated crime, the murder of a young man named Leonder Goodwin, and asked Kouray to see if that information could be used to get him a more lenient sentence in the robbery case. Kouray approached the District Attorney’s Office and negotiated a plea bargain, under which defendant pleaded guilty to robbery. His sentence was capped at 12 years, with the understanding that he could get less time if he provided helpful information about the Goodwin murder.
After entering his plea, defendant met with Detective John Sims in Kouray’s presence in October of 2003. Defendant told Sims, in substance, that on the night of the murder he had been *128 walking to his niece’s house when he saw two men he recognized, Antoan Baker and “Kendu,” shoot a “kid.” He said that he met Baker and Kendu shortly after the shooting, discussed the incident, and discovered that Kendu was carrying “a gun that used to be mine.” Defendant said he later retrieved the gun and threw it away in a sewer. Defendant identified Baker and Kendu from photo arrays and led the police to the sewer where he said he had dropped the gun, but the gun was not recovered.
Sims evidently found defendant’s story unconvincing. An assistant district attorney reported to County Court that defendant’s information “was not truthful information,” and defendant received a 12-year sentence for the robbery.
In 2006, having been told by Antoan Baker that defendant himself took part in the Goodwin murder, Sims decided that he would like to speak to defendant again. The District Attorney instructed Sims that he must first “check with Mr. Kouray to see whether he continued to represent him or what the nature of his representation was.” Sims and Detective Michael Brown then visited Kouray at his office and asked whether Kouray was still representing defendant. Kouray, according to Sims, answered “No, I’m not,” adding: “I represented Mr. McLean in the robbery . . . [y]ou can go talk to him if you want to.” Kouray acknowledged that Sims or Brown had asked him whether he still represented defendant. Kouray’s recollection of his response was: “He’s been sentenced. The robbery case is over.”
After speaking to Kouray, Sims and Brown went to see defendant in prison. No lawyer was present. Sims and Brown gave defendant Miranda warnings, but did not ask if Kouray still represented him, and defendant volunteered nothing on that subject. Told that Baker was implicating him in the Goodwin homicide, defendant gave a new version of events: He said that he was in a car with Baker, Kendu and a fourth man, intending to commit a robbery. Defendant said that Kendu borrowed defendant’s gun, and that Baker and Kendu got out of the car and opened fire on a group of “kids,” one of whom fell.
Defendant was indicted for murder and other crimes in connection with Goodwin’s death. After unsuccessfully moving to suppress his 2006 statement to Sims and Brown, he pleaded guilty. He argued on direct appeal that the taking of that statement violated his right to counsel, but both the Appellate Division (People v McLean, 59 AD3d 861 [3d Dept 2009]) and this *129 Court (15 NY3d 117 [2010]) found the record insufficient to permit review of the claim.
Defendant then moved in County Court to set aside his conviction pursuant to CPL 440.10, again arguing that the 2006 interview violated his right to counsel. County Court held an evidentiary hearing, at which Sims and Kouray described their 2006 conversation in the language quoted above. The court, apparently regarding the two versions as consistent, gave “full credence” to both. It denied the motion, and the Appellate Division, with one Justice dissenting, affirmed (People v McLean, 109 AD3d 670 [2013]). The dissenting Justice granted defendant leave to appeal to this Court (2013 NY Slip Op 98701[U] [2013]), and we now affirm.
II
Defendant claims that Sims’s and Brown’s questioning of him in 2006 violated the rule that, once an attorney has entered a proceeding, the defendant cannot be questioned in the absence of counsel, unless he affirmatively waives his right to counsel in the attorney’s presence (People v Arthur, 22 NY2d 325, 329 [1968]; People v West, 81 NY2d 370, 373-374 [1993]). The People respond with three arguments, made in the alternative: They say that Kouray never entered the homicide case as defendant’s lawyer; that if he did, he did so only for a limited purpose (negotiating a disposition of the robbery case) and that the representation terminated when that purpose was accomplished; and that, in any event, the police reasonably concluded, after talking to Kouray, that he was no longer defendant’s lawyer. We are persuaded by the third of these arguments, and need not consider the first two.
West is the most relevant precedent. There, the defendant had been represented by counsel in a 1982 lineup, which did not result in any charge against him. In 1985 and 1986, the police, having “made no attempt to determine whether defendant was still represented by his lawyer,” arranged for an informant to speak to the defendant and to tape record the conversations (81 NY2d at 372). We held that the police officers’ failure to make inquiry required suppression of the defendant’s statements, regardless of what the inquiry would have shown: “Should the police have desired to question after defendant’s right had attached, it was their burden to determine whether the attorney-client relationship had terminated” (id. at 380).
The rule of West places a significant burden on the police, but we made clear that the burden is not impossible to sustain. We *130 rejected the suggestion, made by Judge Simons in dissent, that under our holding “the right to counsel is interminable” (id.). It would be a different case, we explained, if the police, when they arranged for the tape recordings, “had any reason to believe that a known attorney-client relationship in the matter had ceased” (id. at 381).
Here, the police did have a reason — an excellent one — to believe that the attorney-client relationship had ceased: the attorney had told them so. By asking the question and getting an unequivocal answer, the police discharged their burden. It is no doubt true that they could have done more. They could have explained to Kouray exactly why they were eager to talk to defendant, or they could have asked defendant himself whether the relationship had reached an end. Perhaps had they done so, they would have received a different answer. But the police are not required to take all imaginable steps to protect a defendant’s right to counsel. Where they follow the rules laid down in our cases — rules that are, in general, highly protective of the attorney-client relationship — they need do no more (see People v Booker, 53 AD3d 697, 699 [3d Dept 2008] [holding that the police were entitled to rely on an attorney’s assurance that the defendant had decided, after consultation with the attorney, to waive his right to counsel]).
Accordingly, the order of the Appellate Division should be affirmed.