=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 218
The People &c.,
          Respondent,
        v.
Raul Johnson,
          Appellant.




          Ellen O'Hara Woods, for appellant.
          Itamar J. Yeger, for respondent.









SMITH, J.:

          Here, as in <u>People v McLean</u> (___ NY3d ___ [2014]), we

consider a case in which a defendant, charged with one crime,

sought to obtain leniency by providing information about a

second, unrelated crime.  Here, as in <u>McLean</u>, defendant was

ultimately charged with committing the second crime, and the

- 1 -

People offered in evidence statements defendant made to the police when the lawyer who represented him in the first case was not present.

In McLean, the first case was over when defendant was questioned, and the lawyer who had handled that case told the police that the representation had ended. We held there that the defendant's right to counsel was not violated. Here, the first case, and the lawyer's representation of defendant in it, were continuing when defendant was questioned about the second case. We hold that under these circumstances, there was a violation of defendant's right to counsel.

**I**

Defendant was arrested for burglary. He told one of the arresting officers that he had information about an earlier crime, a stabbing in a supermarket parking lot. This led to a meeting on October 12, 2007 attended by defendant; by John Schwarz, the lawyer representing defendant in the burglary case; and by police officers and an assistant district attorney. The meeting began with the signing of a so-called "Queen-for-a-Day" agreement, in which defendant agreed that he would "fully and truthfully respond to any and all questions" the police put to him, and the People agreed that any statement responsive to any such question "will not be used as direct evidence in any prosecution brought" against defendant, except one for perjury or contempt. The agreement said that it would be "null and void" if

defendant violated any of its terms.

During the October 12 meeting, defendant told the police and the assistant district attorney that a friend of his, Sunny Bajwa, had admitted to defendant that he stabbed a man at the supermarket. Defendant said that the stabbing happened while he was in jail, but the police checked the dates and found that defendant had been released ten days before the stabbing. After extensive questioning, the police were skeptical of some aspects of defendant's story, but nevertheless concluded that he would be a useful cooperating witness. They asked him if he would be "wired up" to talk to Bajwa, and defendant agreed.

In January of 2008, defendant was released from jail with the People's consent. On April 19, 2008, defendant, with no lawyer present, met with two police officers and made the statements that are in issue here.

Schwarz, defendant's lawyer, acknowledged that he knew before the April 19 meeting that the police would be in touch with his client. Schwarz testified that it was his understanding that defendant "would present himself and be wired up." He added that he did not believe that defendant "was going to be interrogated by any law enforcement personnel." The police testified that they viewed the meeting as a session to plan for the recorded conversation between defendant and Bajwa.

At the meeting the officers and defendant talked at length about the supermarket stabbing, and defendant's version of

events changed several times.  He began by saying that he was not present at the stabbing, but was told about it.  Then he said that he witnessed it from across the street.  When an officer said that it did not seem possible to see from across the street what defendant claimed to have seen, defendant admitted that he was on the same side of the street as the supermarket.

Defendant continued with a long narrative about what he claimed to have seen, interrupted by occasional questions from the police.  As he told his story, defendant, according to the police testimony, began to seem "more uncomfortable," and said that "at no time was he closer than 20 feet" to the incident.  As his apparent discomfort increased further, an officer asked him what was bothering him, to which his answer was: "I'm afraid I'm not going to go home today."  The officers reassured him that he would, and defendant then admitted that, during the encounter, he had punched the victim.  Asked if he stabbed him, defendant said no, but after going on with his description he changed his story once more, saying that he stabbed the victim in the chest with a knife.

At this point, the police officers interrupted the conversation to consult their supervisor.  When they returned to the interview room, they read defendant his Miranda rights. Defendant agreed to continue talking to them and did so. Eventually, his latest version of the stabbing was reduced to a typed statement, which he signed.  There is no evidence that any

effort was made, at any time on April 19, to contact defendant's lawyer.

Defendant was allowed to go home on April 19, but he was later arrested and charged with attempted murder and assault. Supreme Court denied his motion to suppress his April 19 statements, and defendant was convicted of both crimes. The Appellate Division affirmed, concluding that the police officers "were not barred from questioning the defendant about the stabbing despite the fact that he was represented by counsel on a pending burglary charge, as the two charges were unrelated" (People v Johnson, 100 AD3d 777, 778 [2d Dept 2012]). A Judge of this Court granted leave to appeal (21 NY3d 1005 [2013]), and we now reverse, suppress defendant's statements, and order a new trial.

**II**

Defendant argues that the People's use of the statements he made on April 19 violated both the agreement that he signed on October 12 and his right to counsel under New York law. The October 12 agreement does not help him. It says on its face that it "shall be null and void" if defendant violates any of its terms -- and he obviously violated the requirement that he respond "truthfully" to all police questions. We agree with defendant, however, that the April 19 police questioning was inconsistent with his right to counsel.

Defendant relies on the rule, long established in New York, that "[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel" (People v Arthur, 22 NY2d 325, 329 [1968]).  The People respond that this rule does not apply here because the "proceeding" in which the police questioned defendant on April 19 -- their investigation of the supermarket stabbing -- was one that no attorney had entered. Schwarz, in the People's view, represented defendant only in the burglary case, about which he was not questioned.

We do not find this a viable distinction.  The stabbing investigation cannot be neatly separated from Schwarz's representation of defendant in the burglary case.  Defendant had pinned his hopes for a favorable result in the burglary case on his cooperation with the police investigation of the stabbing. Under these circumstances, Schwarz's duty to his client required him to concern himself with both cases.

Schwarz was not, of course, retained to defend the stabbing case: before the April 19 meeting, defendant had not been charged with the stabbing, and no such charge seemed likely. But Schwarz's obligation in defending the burglary case included an obligation to be alert to, and to avert if he could, the possibility that defendant's cooperation would hurt rather than help him.  No responsible lawyer in Schwarz's situation would

concern himself with the burglary case alone, indifferent to the disaster that might strike defendant if he incriminated himself in the stabbing.

We therefore conclude that defendant's right to counsel encompassed his conversations with police about the stabbing, as long as those conversations were part of an effort to obtain leniency in the burglary case in which Schwarz represented him. Thus, unless the right to counsel was waived, the police should not have questioned defendant about the stabbing in his lawyer's absence. This conclusion does not conflict with our holding in McLean, where the police interviewed the defendant after the first case was over, and where the lawyer who represented the defendant in the first case assured the police that that representation was at an end (see McLean, ___ NY3d at ___).

### III

The People argue, in the alternative, that defendant validly waived his right to be represented by counsel at the April 19 meeting. Unquestionably, where a defendant in one case seeks to obtain leniency by cooperating with the police in another, a limited waiver of the right to counsel to permit that cooperation would be normal and appropriate. In this case, however, there simply was no such waiver. And if there had been, the waiver could hardly have encompassed that part of the police interrogation that took place after the police knew that defendant himself was likely to be prosecuted for the stabbing.

While it is true that Schwarz knew that defendant would meet with the police on April 19, he denied knowing that defendant would be "interrogated."  Perhaps, knowing that defendant was to be "wired up" to talk to Bajwa, Schwarz should have assumed that there would at least be some conversation between defendant and the police as to what defendant and Bajwa would talk about.  But a waiver of the right to counsel cannot be inferred just from an assumption that a lawyer may or may not have made.  In situations like this, the police should request an express waiver by the client, with the lawyer's express consent, preferably in writing.  Where both the lawyer and the client think that cooperation is in the client's best interests, such a waiver should not be hard to get.  Here, for example, a waiver could have been, but was not, made part of the cooperation agreement signed on October 12.

Even if we could find, on this record, a waiver sufficient to authorize the police to interview defendant as a potential witness and informant, that waiver could not have extended to everything that happened here.  The record shows that there was a clearly defined moment when the police learned -- to their great surprise, according to their testimony -- that defendant had actually stabbed the victim.  At that point, they interrupted the meeting, talked to their supervisor, and gave Miranda warnings.  Even if the police had reason to think that, until that moment, they were interviewing defendant with his

lawyer's approval, they could hardly have thought that the lawyer would consent to a further interview, with defendant as a target of the investigation.  At the point where they interrupted their interview, the police should have called Schwarz, and proceeded no further with their questioning of defendant until and unless defendant waived his right to counsel in Schwarz's presence.

Accordingly, the order of the Appellate Division should be reversed, defendant's statements suppressed, and a new trial ordered.

People v Raul Johnson

No. 218

PIGOTT, J.(dissenting):

The suppression court, based on the facts before it, found that there was no connection between the burglary with which defendant had been charged and the stabbing about which defendant claimed to have information. That finding was affirmed by the Appellate Division (100 AD3d 777, 778 [2d Dept 2012]). "[W]hen the Appellate Division adopts a trial court's factual findings and the application of those facts to the applicable legal principles . . . that determination presents a mixed question of law and fact that we cannot overturn unless there is no record support for the trial court's conclusion" (People v Guay, 18 NY3d 16, 22-23 [2011]). Because there is record support for the trial court's determination that the two matters were not so closely related as to bar the detectives from questioning defendant about the stabbing, I would affirm the order of the Appellate Division.

In August of 2007, attorney John Schwarz was appointed by the court to represent defendant with respect to the burglary only. Defendant, hoping to obtain leniency on that charge, claimed to have information relative to an unrelated stabbing that had occurred in 2005. Schwarz and defendant met with

- 1 -

detectives and a prosecutor on October 12, 2007 to discuss that information.  Prior to the meeting, defendant and Schwarz executed a "Queen for a Day" agreement whereby defendant agreed to respond truthfully to all questions asked of him.  During that meeting, defendant implicated a friend in the stabbing. Defendant stated that he was in jail at the time of the stabbing, but the prosecutor, upon speaking with a representative from the jail, learned that defendant had been released ten days before the stabbing.  Nonetheless, defendant agreed to be "wired up" while speaking with his friend.

Six months later, defendant met with detectives and engaged in a discussion with them about acting as a cooperating witness against his friend.  Schwarz was aware of the meeting but did not attend.  As the detectives were questioning defendant about the stabbing, defendant unexpectedly confessed to it. After being read his <u>Miranda</u> rights, defendant signed a typewritten confession.  At no time during this meeting did defendant ask for an attorney, state that he did not wish to speak with the detectives, or state that he had retained an attorney with respect to the stabbing case; nor did Schwarz at any time indicate that he was representing defendant on any charges other than the burglary, because there were no charges pending against the defendant relating to the stabbing.

The majority acknowledges that Schwarz was not retained to represent defendant in the stabbing matter, but suggests that

he had an obligation, as part of his representation of defendant in the burglary case, to be cognizant of the possibility that defendant's cooperation on the stabbing case would be deleterious to defendant (majority op, 6).  I find this conclusion to be unwarranted and, in any event, of no moment.

From the point of view of the police, who were investigating a serious crime committed over two years earlier, the suppression court found they had no expectation that defendant was going to do anything other than assist them in that investigation.  And it is apparent from this record that neither Schwarz nor defendant was under the impression that Schwarz represented defendant in the stabbing case.

The record evidence upon which the suppression court based its decision supports the finding that, as far as Schwarz was concerned, once defendant spoke with detectives at the proffer session in his presence and agreed to wear a wire, Schwarz's work with respect to the stabbing was finished. Schwarz even provided the detectives with defendant's cell phone number so they could contact defendant to arrange a meeting between themselves and defendant, there being no need for him to attend.  The suppression court concluded that "[a]s far as all involved were concerned, there was no matter, other than the burglary, in which the defendant might be represented or desire representation."  In light of the fact that there is evidence in the record supporting that conclusion, we must accord it

deference.

The majority states that "[n]o responsible lawyer in Schwarz's situation would concern himself with the burglary case alone, indifferent to the disaster that might strike defendant if he incriminated himself in the stabbing" (majority op, 6-7). Whether this is a fair characterization of Schwarz's conduct is not a matter of concern for this Court. The focus should be on the conduct of the detectives who, as the suppression court found, acted properly under the facts and circumstances. Certainly, the detectives were prohibited from questioning defendant about the burglary -- a charge for which defendant was represented -- but they were not prohibited from questioning him about the stabbing.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed, defendant's motion to suppress granted, and a new trial ordered. Opinion by Judge Smith. Chief Judge Lippman and Judges Read, Rivera and Abdus-Salaam concur. Judge Pigott dissents in an opinion.

Decided December 17, 2014