*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 12, 2015                105213
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

MATTHEW A. SLOCUM,
                        Appellant.
_____


Calendar Date:  September 16, 2015

Before:  Lahtinen, J.P., Egan Jr., Devine and Clark, JJ.

_____


        Michael J. Mercure, Public Defender, Fort Edward, for
appellant, and appellant pro se.

        P. David Soares, District Attorney, Albany (Jason
Weinstein, New York Prosecutors Training Institute, Inc., Albany,
of counsel), for respondent.

_____


Clark, J.

        Appeal from a judgment of the County Court of Washington
County (McKeighan, J.), rendered March 20, 2012, upon a verdict
convicting defendant of the crimes of murder in the second degree
(three counts), arson in the third degree, tampering with
physical evidence, petit larceny and criminal possession of a
weapon in the third degree.

        Defendant was convicted by a jury of shooting and killing
his mother, stepfather and stepbrother in their home in the Town
of White Creek, Washington County, as well as stealing several
items of personal property, including multiple firearms, and
setting fire to the victims' home.  The evidence considered by

the jury included, among other things, statements that defendant made to law enforcement officials on the night of his arrest, as well as his statement to a social services worker while in jail following his arrest. Defendant argues on appeal that his convictions for murder in the second degree were against the weight of the evidence, an argument we reject (see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Bleakly, 69 NY2d 490, 495 [1987]).

Defendant's admissions, together with the testimony of his girlfriend, Loretta Colegrove, and the forensic evidence, demonstrate that defendant, with the requisite intent, caused the death of his mother, stepfather and stepbrother (see Penal Law § 125.25 [1]; People v Hamilton, 127 AD3d 1243, 1243 [2015], lvs denied 25 NY3d 1164 [2015]). While a contrary verdict would not have been unreasonable in light of defendant's testimony at trial identifying Colegrove as the shooter, the jury was free to credit Colegrove's testimony over defendant's testimony (see People v Stanford, 130 AD3d 1306, 1308 [2015]) and, upon our independent review, we find defendant's convictions of murder in the second degree to be supported by the weight of the evidence (see People v Green, 121 AD3d 1294, 1294-1295 [2014], lv denied 25 NY3d 1164 [2015]; People v Vanderhorst, 117 AD3d 1197, 1198-1200 [2014], lv denied 24 NY3d 1089 [2014]).[1] With that said, however, the dispositive issue herein is whether the jury should have had before it all the evidence it did. Inasmuch as we conclude that defendant was denied his right to counsel during police questioning, we reverse the judgment of conviction, partially grant defendant's previously denied motion to suppress, and direct a new trial.

It is well settled that a defendant's indelible right to counsel attaches in two situations; the first being "upon the commencement of formal proceedings, whether or not the defendant has actually retained or requested a lawyer," and the second when "an uncharged individual has actually retained a lawyer in the matter at issue or, while in custody, has requested a lawyer in

---

[1] Defendant does not challenge the legal sufficiency of the evidence on appeal.

that matter" (<u>People v West</u>, 81 NY2d 370, 373 [1993]).  Once a defendant unequivocally requests counsel, all police questioning must cease (<u>see People v Jemmott</u>, 116 AD3d 1244, 1246 [2014]).  Further, "[o]nce a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his [or her] right to counsel in the absence of the lawyer" (<u>People v Hobson</u>, 39 NY2d 479, 481 [1976]; <u>see People v Callicutt</u>, 85 AD3d 1326, 1327 [2011], <u>lvs denied</u> 18 NY3d 992, 993 [2012]).

On July 13, 2011, the same day the crimes were committed, defendant fled to New Hampshire with Colegrove and their three-month-old child, where he was apprehended and arrested later that evening.  Also on that day, but before defendant's arrest, Michael Mercure, the Washington County Public Defender, sent a letter to the Washington County District Attorney's office, the Washington County Sheriff's Department and the State Police[2] indicating that defendant had open charges in the Town of Greenwich, Washington County and, as such, was "a present client of the Public Defender's [o]ffice and would qualify for representation on any additional charges against him."  The letter went on to state that Mercure knew defendant was "a person of interest and/or suspect in a potential arson/homicide in the Town of White Creek."  On this basis, Mercure requested that he be contacted if defendant was "arrested and/or detained" and he specifically requested that defendant "not be questioned or interrogated without counsel present."

Bruce Hamilton, an investigator with the Washington County Sheriff's Department, and John Ogden, a State Trooper, traveled to New Hampshire to interview defendant at the state-owned facility where he was being detained.  Prior to their departure for New Hampshire, a meeting was held at which the District Attorney instructed Hamilton and Ogden that, despite Mercure's letter, they could interrogate defendant until he asked for an attorney.  Before commencing the interrogation, Hamilton told

---

[2]  The letters to the District Attorney and the Sheriff were sent by fax and regular mail while the letter to the State Police was sent by regular mail.

defendant that he was aware that defendant was represented by the Public Defender's office on a different charge and asked defendant "if he felt that he should have an attorney or if he wanted to be represented by the Public Defender's office," to which defendant responded, "Yeah, probably." Likewise, Ogden recalled Hamilton asking defendant "if he intended or expected to use [the Public Defender's office] to represent him" with respect to the current charges and that defendant had replied, "Yeah, probably." In response to Hamilton's further inquiry as to defendant's satisfaction with the legal representation afforded by the Public Defender's office, defendant indicated displeasure at the resolution of an old case. Hamilton and Ogden then handed defendant a Miranda rights form, had him sign it and proceeded to question defendant about the instant crimes. Neither officer showed defendant Mercure's letter, nor did they inform him of its existence.

"A defendant's request for an attorney will invoke his or her indelible right to counsel if the request is unequivocal, an inquiry which is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Higgins, 124 AD3d 929, 931 [2015] [internal quotation marks and citations omitted]; see People v Glover, 87 NY2d 838, 839 [1995]). "The relevant inquiry is whether a reasonable police officer would have understood the statement in question as a request for an attorney" (People v Jemmott, 116 AD3d at 1247 [citation omitted]), and a statement that is "merely a forewarning of a possible, contingent desire to confer with counsel rather than an unequivocal statement of [a] defendant's present desire to do so" is not sufficient to invoke the right to counsel (People v Higgins, 124 AD3d at 931).

On appeal, the People contend that defendant's statement — namely, "Yeah, probably" — did not unequivocally invoke his right to counsel. We disagree. The word "probably" is defined as "very likely" or "almost certainly" (Merriam—Webster Online Dictionary, http://www.MerriamWebster.com/dictionary/probably). It is difficult to conceive of circumstances where "probably" would mean "no," particularly here, where the police knew that

defendant was currently represented, albeit on unrelated charges, and also knew that counsel was so clearly attempting to protect his current client's constitutional rights. Defendant's demeanor and tone when saying "Yeah, probably" was his simple expression, in everyday language, that he was not competent or capable to deal with the officers' questioning. Thus, based on the particular circumstances herein, a reasonable police officer would have understood that defendant's statement was a request for counsel, requiring questioning without representation to cease (see People v Jemmott, 116 AD3d at 1247).[3]

Even if a reasonable officer could have interpreted "Yeah, probably" to be equivocal, the unique circumstances presented herein — namely, the existence of Mercure's letter — created a situation where Hamilton and Ogden were required to inquire further to see if the indelible right to counsel had attached and to "insure that the defendant's right to be represented by counsel be protected" (People v Callicutt, 85 AD3d at 1328 [internal quotation marks and citation omitted]). "Any arguable ambiguities in the attorney-client relationship cannot be seized by [law enforcement] as a license to play fast and loose with this precious right" (id. [internal quotation marks and citations omitted]; see People v Lopez, 16 NY3d 375, 380-381 [2011]; People v Ramos, 40 NY2d 610, 618 [1976]). To be clear, we understand the constraints of our case law prohibiting us from finding that Mercure's letter, in and of itself, constituted a formal appearance by counsel because it did not communicate that Mercure represented defendant with respect to the murders/arson. As such, we must find that this letter alone did not invoke defendant's right to counsel (see People v Pacquette, 17 NY3d 87, 97 [2011]; People v Grice, 100 NY2d 318, 322-324 [2003]; People v Arthur, 22 NY2d 325, 329 [1968]). However, our concern here is focused on the fact that, rather than clarifying whether defendant wanted Mercure's representation on the current charges, Hamilton and Ogden instead engaged in an irrelevant and brief

---

[3]    Our holding that defendant invoked his right to counsel renders discussion of the adequacy of defendant's waiver of his Miranda rights academic (see People v Esposito, 68 NY2d 961, 962 [1986]).

discussion of defendant's past experiences with the Washington County Public Defender's office. They did not offer defendant a telephone, the ability to communicate with the Public Defender's office or even inform him of Mercure's letter.[4] Their inquiry into defendant's satisfaction, or lack thereof, with his attorney in an earlier case did not equate to compliance with the mandates set forth in Lopez and its progeny, and it was improper for Hamilton and Ogden to rely on defendant's voiced dissatisfaction to skirt his right to counsel. In light of their knowledge of Mercure's letter, by not asking the simple follow-up question of whether defendant wanted Mercure's representation at that time, Hamilton and Ogden infringed upon defendant's right to counsel (see People v McLean, 109 AD3d 670, 677-678 [2013, McCarthy, J., dissenting], affd 24 NY3d 125 [2014]). Therefore, defendant's indelible right to counsel attached when he said, "Yeah, probably."

In any event, our inquiry continues because "[a] violation of the indelible right to counsel does not automatically constitute reversible error. Instead, it is reviewed under the harmless error doctrine for constitutional violations" (People v Lopez, 16 NY3d at 386; see People v Dashnaw, 85 AD3d 1389, 1391 [2011], lv denied 17 NY3d 815 [2011]). "Errors of this type are considered harmless when, in light of the totality of the evidence, there is no reasonable possibility that the error affected the jury's verdict" (People v Lopez, 16 NY3d at 386 [internal quotation marks and citations omitted]; see People v Dashnaw, 85 AD3d at 1391). Here, absent defendant's statements, the remaining evidence at trial consisted of Colegrove's testimony that defendant committed the murders, defendant's testimony that Colegrove committed the murders, forensic evidence that failed to conclusively establish that defendant committed the murders, defendant's statements prior to the murders and his apology letter to his brother, which did not contain an explicit confession. As it cannot be said that there is no reasonable

_____

[4] We agree with the People's statement at oral argument that, although the law does not so require, the best practice would have been for Hamilton and Ogden to simply have shown Mercure's letter to defendant.

possibility that the admission of defendant's statements at trial affected the jury's verdict, County Court committed reversible error in failing to suppress defendant's statements to the officers while in custody in New Hampshire (see People v Dashnaw, 85 AD3d at 1392; People v Hilliard, 20 AD3d 674, 679 [2005], lv denied 5 NY3d 853 [2005]). Accordingly, these statements must be suppressed.

Defendant's statements to Robin MacNeil, a child protective services caseworker with the Washington County Department of Social Services, were also erroneously ruled admissible. In this regard, statements made by a defendant, after his or her right to counsel had attached, to a caseworker undertaking an investigation on behalf of child protective services will only be suppressed if the caseworker is acting as an agent of the police (see CPL 60.45 [2] [b]; People v Cordato, 85 AD3d 1304, 1310 [2011], lv denied 17 NY3d 815 [2011]; People v Wilhelm, 34 AD3d 40, 47-48 [2006]). Relevant factors in determining whether a caseworker operated as an agent of law enforcement include, "'a clear connection between the police and the private investigation[,] completion of the private act at the instigation of the police[,] close supervision of the private conduct by the police . . . and a private act undertaken on behalf of the police to further a police objective'" (People v Greene, 306 AD2d 639, 640-641 [2003], lv denied 100 NY2d 594 [2003], quoting People v Ray, 65 NY2d 282, 286 [1985]).

Here, it is undisputed that defendant's right to counsel had attached before July 19, 2011, the day MacNeil, accompanied by Hamilton, met with defendant at the Washington County jail in order to read defendant a child protective report concerning his child with Colegrove and the alleged murders/arson. As of July 15, 2011, defendant had been assigned counsel, the Washington County Public Defender's office, and an additional letter from Mercure had been received by the District Attorney requesting no further questioning of defendant without counsel present. Prior to reading the report, MacNeil told defendant that he could respond if he wanted to and, after she read it to him, defendant

declared that Colegrove had nothing to do with it.[5]  MacNeil acknowledged that she works closely with the police in these types of investigations and that, to the best of her recollection, Hamilton was present in the room as she was speaking with defendant.  Based on the foregoing, we find that MacNeil was acting as an agent of law enforcement and, therefore, her questioning also infringed upon defendant's right to counsel. Thus, as the product of interrogation by a public servant engaged in law enforcement activity, defendant's statements to MacNeil were involuntary and should have been suppressed (see People v Wilhelm, 34 AD3d at 47-48).  Conversely, however, defendant's statements to law enforcement during transport to New York were voluntary and spontaneous and, as such, properly admitted at trial (see People v Rivers, 56 NY2d 476, 479-480 [1982]).

Defendant's argument concerning alleged Brady violations, as well as his remaining contentions of prosecutorial misconduct and harsh and excessive sentence, have been rendered academic by our decision.

Lahtinen, J.P., Egan Jr. and Devine, JJ., concur.


ORDERED that the judgment is reversed, on the law, grant that part of defendant's motion to suppress statements made after he invoked his right to counsel as set forth herein and all statements made to Robin MacNeil, and matter remitted to the County Court of Washington County for further proceedings not inconsistent with this Court's decision.


ENTER:

Robert D. Mayberger
Clerk of the Court

---

[5]  Colegrove was given full immunity and testified against defendant at trial.