People v Slocum (2019 NY Slip Op 08732)





People v Slocum


2019 NY Slip Op 08732


Decided on December 5, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 5, 2019

109568

[*1]The People of the State of New York, Respondent,
v
Matthew A. Slocum, Appellant.

Calendar Date: October 10, 2019

Before: Egan Jr., J.P., Clark, Mulvey and Devine, JJ.


Mark A. Diamond, Albany, for appellant, and appellantpro se.
P. David Soares, District Attorney, Albany (Christopher D. Horn of counsel), for respondent.

P. David Soares, District Attorney, Albany (Christopher D. Horn of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered July 14, 2017, upon a verdict convicting defendant of the crimes of murder in the second degree (three counts), arson in the third degree, tampering with physical evidence, petit larceny and criminal possession of a weapon in the third degree.
Defendant was alleged to have shot his mother, stepfather and stepbrother, stolen some of their property, then set their house on fire. A jury found defendant guilty of murder in the second degree (three counts), arson in the third degree, tampering with physical evidence, petit larceny and criminal possession of a weapon in the third degree.[FN1] County Court sentenced defendant, as a second felony offender, to prison terms of 25 years to life for each of the three murder convictions, to run consecutively; 7½ to 15 years for the arson conviction and 2 to 4 years for the tampering with physical evidence conviction, to run concurrently with each other but consecutively to the murder convictions; and 3½ to 7 years for the criminal possession of a weapon conviction, to run concurrently with the murder convictions. The court also imposed a $1,000 fine for the petit larceny conviction. Defendant appeals.
Defendant's challenge to the legal sufficiency of the evidence is not preserved because at trial he did not raise any specific ground for dismissal (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Cruz, 131 AD3d 724, 724 [2015], lv denied 26 NY3d 1087 [2015]). "However, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Cruz, 131 AD3d at 725 [citations omitted]; accord People v Madsen, 168 AD3d 1134, 1135 [2019]; see People v Danielson, 9 NY3d 342, 349 [2007]). In that review, this Court must determine whether an acquittal would not have been unreasonable and, if so, "must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions[, then,] [b]ased on the weight of the credible evidence, . . . decide[] whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d at 348).
Defendant's girlfriend testified that, on the night of the incident, she awoke and saw defendant standing, with a long gun in his hand, over the stepbrother. She then saw a flash and heard a loud noise. Defendant told her to pack their things, as he went around the house turning off lights "to make people think that they were sleeping, and [because he] didn't want the cops to come." She then observed defendant taking firearms from a room in the house and loading them into a vehicle. According to the girlfriend, defendant went into his mother's room and grabbed some items, including her purse, which was covered in blood. The girlfriend saw the mother and stepfather covered in a blanket. Defendant handed the purse to the girlfriend and directed her to remove any money and keys. After she did so, she washed the blood from her hands. Defendant grabbed a gas can, went inside and dumped gas all over, made a trail out to the porch and lit it. Upon realizing that they had taken the keys to the wrong vehicle, defendant grabbed some guns and other items from the first vehicle, loaded them into a second vehicle and drove off with the girlfriend and their baby. Defendant handed the girlfriend a cell phone he had taken from the stepbrother so that she could call her mother.
At the girlfriend's mother's house, defendant borrowed a shirt because he was shirtless, and asked where he could get money for old coins and guns. After leaving that house, defendant threw the firearms over a fence beside the road and went to pawn shops to sell coins and jewelry that belonged to his mother. Defendant told the girlfriend that he was sorry for ruining their lives. In letters he wrote to her from jail, he also apologized for everything, and stated that he knew who to blame and that he wished the police had shot him. Police recovered the guns from the roadside, after the girlfriend showed them where defendant had thrown them. Video from two pawn shops and copies of defendant's letters corroborated portions of her testimony, as did testimony from the girlfriend's mother and stepfather, which confirmed that defendant arrived shirtless (which was unusual for him), asked about pawning items, and smelled like a campfire.
Defendant's cousin testified that, on the day before the incident, defendant told his mother, "I'll burn your house down," after she declined his request for money. An inmate who was housed with defendant testified that, at first, defendant told him that the girlfriend committed the crimes, but, over time, defendant admitted that he killed the victims. A correction officer testified that she once heard defendant shout out from his dorm, "I'm here for murder. Don't be mixing me in with these others," and, another time, defendant told her "you don't know who . . . I am; I'm a murderer." Autopsies showed that the victims died from gunshot wounds to the head, while they were lying down, before the fire began. The mother's blood was found on her purse, some dollar bills, the baby's burp cloth, the passenger seats of the two vehicles, the barrel of a gun, defendant's shorts and the girlfriend's shirt. Although an expert in blood stain pattern analysis testified that the blood spots in one area of the girlfriend's shirt were consistent with blood spatters, he could not determine what caused them. Defendant's DNA was discovered on the stepbrother's cell phone.
The verdicts are not against the weight of the credible evidence. The girlfriend testified that she observed defendant shoot the stepbrother and saw the other two victims covered by blankets. Other witnesses confirmed that they heard several gunshots around the same time, defendant made incriminating statements admitting that he committed the murders and he wrote letters apologizing for his actions. This trial testimony, as well as corroborating evidence, supports the verdicts that defendant intended to and caused the death of the victims (see Penal Law § 125.25 [1]). Defendant's contention that the girlfriend was the one who committed the crimes presented a credibility issue for the jury to resolve (see People v Delosh, 2 AD3d 1047, 1049 [2003], lv denied 1 NY3d 626 [2004]), and it was reasonably resolved against defendant.
Similarly, the girlfriend's testimony that she observed defendant intentionally start the fire, the testimony that defendant smelled of smoke and expert testimony that the fire at the victims' residence was intentionally set support the verdict that defendant is guilty of arson in the third degree (see Penal Law § 150.10 [1]; see also People v Adams, 43 AD3d 1423, 1424 [2007], lv denied 9 NY3d 1004 [2007]). The girlfriend's testimony that defendant turned off lights because he was concerned about other people or the police finding out about what was happening in the house, then set the house on fire, support the inference that he intended to destroy evidence of his murders that he believed would be used against him in an official proceeding. Thus, the weight of the evidence supports the verdict that defendant tampered with physical evidence (see Penal Law § 215.40 [2]; see generally People v Meran, 143 AD3d 423, 424 [2016], lv denied 28 NY3d 1074 [2016]; People v Thompson, 75 AD3d 760, 764 [2010], lvs denied 15 NY3d 893, 894, 896 [2010]).
The record contains proof that the stepbrother used his cell phone a few hours before the murders, defendant's DNA was found on the cell phone, defendant handed the stepbrother's cell phone (identified by a picture of the stepbrother's child on the main screen) to the girlfriend and told her to use it, and defendant had the cell phone when police encountered him. This evidence supports the conviction for petit larceny (see Penal Law § 155.25). The girlfriend's testimony that she saw defendant shoot the stepbrother with a firearm, and proof from the autopsies that the victims died as a result of gunshot wounds, established that defendant possessed a gun with the intent to use it against another person, supporting the conviction for criminal possession of a weapon in the third degree (see Penal Law § 265.02 [1]). Thus, none of the convictions is against the weight of the evidence.
By not objecting during the prosecutor's summation, defendant failed to preserve his argument that the prosecutor committed misconduct (see People v Sostre, 172 AD3d 1623, 1626-1627 [2019], lv denied 34 NY3d 938 [2019]; People v Stanford, 130 AD3d 1306, 1309 [2015], lv denied 26 NY3d 1043 [2015]). Counsel's failure to object to the prosecutor's remarks did not amount to ineffective assistance of counsel (see People v Stanford, 130 AD3d at 1309).
County Court did not err in running some of the prison terms consecutively. Penal Law § 70.25 (2) provides that, "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently." However, the court has discretion to impose consecutive sentences when "the convictions arose from separate and distinct acts, notwithstanding that they occurred in the course of a continuous incident" (People v Dunham, 172 AD3d 1462, 1466 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1068 [2019]; see People v Brown, 80 NY2d 361, 364 [1992]). As relevant to this argument, defendant was sentenced to prison terms of 7½ to 15 years for arson in the third degree and 2 to 4 years for tampering with physical evidence, to run concurrently with each other but consecutively to the sentences for murder in the second degree. The murder convictions arose from defendant shooting and killing three victims, while the arson and tampering with physical evidence convictions arose from the separate act of defendant setting fire to the victims' residence. Accordingly, County Court had the discretion to run the sentences for those counts consecutively to the sentences for the murder counts (see People v Mannino, 89 AD3d 1105, 1106 [2011], lv denied 18 NY3d 959 [2012]).
Finally, we have reviewed the arguments raised in defendant's pro se supplemental brief and find them to be without merit.
Egan Jr., J.P., Clark and Devine, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: At a previous trial, County Court dismissed four other counts, and the jury found defendant guilty of the same seven counts at issue here. Upon appeal from that judgment of conviction, this Court, among other things, determined that defendant was denied his right to counsel during custodial questioning and, therefore, reversed the judgment of conviction, partially granted defendant's suppression motion and ordered a new trial (133 AD3d 972 [2015], appeal dismissed 29 NY3d 954 [2017]).